COMMONWEALTH *vs.* THOMAS FLEMING.

Bristol. September 13, 1971. — November 8, 1971.

Present: TAURO, C.J., CUTTER, REARDON, BRAUCHER, & HENNESSEY, JJ.

*Jurisdiction,* Of crime. *Insanity. Homicide. Practice, Criminal,* Verdict, Comment by judge, Question by judge.

Where the defendant at the trial of an indictment for murder in the first degree had given a voluntary statement to the police shortly after the homicide showing that the crime was committed in Massachusetts, but repudiated the statement at his trial, asserting that the offence occurred in Rhode Island, it was held that while it must be proved that the crime took place in this Commonwealth, the jury could so find on this conflicting evidence. |406–407|

At the trial of an indictment for murder in the first degree, where there was conflicting evidence of the defendant's mental capacity, the question was properly left to the jury, there being testimony that the defendant had substantial capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of law. |407–408|

At the trial of an indictment for murder in the first degree, it was not open to the defendant to show that as a result of mental disease he was incapable of deliberate premeditation, because that defence is not recognized in this Commonwealth. |407–408|

Upon polling of a jury in a criminal case, the answer to the questions put to one of the jurors, considered as a whole, indicated that the jury were unanimous in arriving at their verdict of murder in the first degree. |408|

INDICTMENT found and returned in the Superior Court on February 7, 1969.

The case was tried before *Hale,* J.

*Conrad W. Fisher* for the defendant.

*Roger F. Sullivan,* Assistant District Attorney, for the Commonwealth.

REARDON, J. This is an appeal under the provisions of G. L. c. 278, §§ 33A–33G. The defendant was tried and found guilty by a jury on an indictment of murder in the first degree; the jury recommended that the death sentence not be imposed. The case is here with a summary of the

record, a transcript of the evidence, and various assignments of error, some of which have been waived.

The jury could have found the following facts. About 2:45 A.M. on July 6, 1968, the body of Kathleen Kirk was found in the cellar of the defendant's home located in East Providence, Rhode Island. She had been shot three times in the head, the cause of death being a penetrating bullet wound of the head with severe brain laceration. The defendant had been acquainted with the deceased for two and one-half years. For some two months prior to the killing there had been difficulties between them, and for two weeks before the event he had planned to kill her. Around 6 P.M. on the night of the shooting the defendant met the deceased at a restaurant operated by her mother. At 11:45 P.M. that same night he again met the deceased, this time at a restaurant called "The Gaslight." The two left the restaurant sometime thereafter in the deceased's father's car, which she drove. The defendant asked the deceased to drive him to his home because his car's transmission was broken. He said he wanted to return home to obtain money to repair his car. In fact, the transmission of his car was not broken. When he arrived home the defendant procured a gun with ammunition. He returned to the car and requested the deceased to drive him to Seekonk in Massachusetts. They drove to the vicinity of the Seekonk High School where the defendant ordered the deceased to stop; he then fired three bullets into the deceased's head. Following this incident he returned to his house, threw the body of the deceased down the cellar stairs, and then mutilated it with a knife. Thereafter he went upstairs, changed his clothes, wrapped his hand which he had injured in the shooting, and drove to Boston.

Later, while proceeding west on the Massachusetts Turnpike, he decided to notify the police of what he had done. He stopped at the State police barracks in Southboro where he announced, "I think you will want me, I just killed a girl." He was immediately advised by the police of his rights. He told his police interrogators where the gun was

located in his car and asked a trooper to "go get it." He described the crime in which he had just been involved. At this time the State police asked him to draw a map of the location where the shooting occurred, and he did so indicating a spot in Seekonk near the high school. Later the same morning he directed police to a location in Seekonk, pointing out a site and stating, "I am sure it is the spot because I could see the high school on the side of me."

While there was conflicting evidence from experts as to the mental capacity of the defendant, there was testimony that the defendant did not suffer from paranoia and was "fully aware and did have substantial capacity to appreciate the criminality of his conduct and to conform that conduct to the requirements of the law." For purposes of disposition of this appeal, assignments of error of the defendant will be grouped for discussion.

1. It is first argued that the trial judge erred in denying the defendant's motion to dismiss the indictment and for a directed verdict. These assignments raise the question whether as matter of law there was sufficient evidence to prove that the crime was committed within the Commonwealth of Massachusetts. Subsequent to giving his original story to the police the defendant denied that the shooting occurred in Massachusetts. He said that his original story was concocted to avoid his being sent to prison in Rhode Island where he feared meeting the deceased's brother who was jailed there at that time. He also feared that a Rhode Island trial would subject his parents to more publicity than one in Massachusetts. It is elementary that it must be shown that jurisdiction lodged in the courts of Massachusetts before the defendant can be found guilty of the offence charged. A review of the transcript discloses ample evidence to find that the crime occurred in Massachusetts. At the hearing on the motions the judge decided properly, in our view, to leave the question of the location of the crime to the jury. In *Commonwealth* v. *Dorr*, 216 Mass. 314, there was physical evidence that a homicide occurred in one

county; this was contrary to the defendant's testimony that it actually occurred in another. In holding that the jury could have found that the homicide occurred in the first county, the court, at p. 317, said that the "statement of the defendant . . . might have been disbelieved by the jury, who saw him on the witness stand and had opportunities for determining as to his truthfulness and reliability." In the instant case there was no error in the denial by the judge of the defendant's motions; there was sufficient evidence that the crime occurred in Massachusetts to make its location a jury question. A case cited by the defendant, *Commonwealth* v. *Knowlton*, 265 Mass. 382, which stated that the homicide could be found to have been committed in the jurisdiction where the body was found, is irrelevant on the facts of this case.

2. The defendant contends that he should have been acquitted because, as a result of mental disease or defect, he was not responsible for his criminal conduct. Alternatively, the defendant argues that although evidence was introduced tending to prove that for two weeks prior to the crime he intended to murder the deceased he suffered from mental illness which precluded a finding of deliberate premeditation (see *Commonwealth* v. *Hicks*, 356 Mass. 442, 444; *Commonwealth* v. *Talbert*, 357 Mass. 146, 148). Hence, he says his conviction should be reduced from first to second degree murder.

In *Commonwealth* v. *McHoul*, 352 Mass. 544, 546–547, we adopted the definition contained in the Model Penal Code, Proposed Official Draft (1962), § 4.01, p. 66. That section says that a "person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law." Here there was conflicting testimony by psychiatrists regarding the defendant's mental capacity. Thus, as to the defendant's first contention, a question of fact was presented, and its resolu-

tion was properly left to the jury. *Commonwealth* v. *DeSalvo,* 353 Mass. 476, 482–483. *Commonwealth* v. *Francis,* 355 Mass. 108, 111. The defendant's alternative claim — that he was incapable of deliberate premeditation because of mental disease — must also fail since that defence is not recognized in this jurisdiction. The jury having found that the defendant possessed the capacity requisite to render him responsible for his criminal conduct, the only question remaining as to deliberate premeditation was whether the murder was "committed with deliberately premeditated malice aforethought." G. L. c. 265, § 1. The evidence amply supports the jury's finding that it was. *Commonwealth* v. *Cooper,* 219 Mass. 1, 4–6. Compare *Commonwealth* v. *Taylor,* 263 Mass. 356, 362–363; *Commonwealth* v. *Delle Chiaie,* 323 Mass. 615, 617.

3. There is argument by the defendant that the verdict was not unanimous. Although there is no right to poll the jury (*Commonwealth* v. *Goldenberg,* 338 Mass. 377, 386), the judge allowed it in this case. The question of the unanimity of the verdict centers about the polling of one juror. The juror was asked whether the defendant was guilty or not guilty, and his answer was, "Guilty." He was next asked of what the defendant was guilty, and he responded, "Murder." He was finally asked whether he had any recommendation, and he said, "No death penalty." While the juror did not respond precisely as instructed by the judge, his responses were given during the polling of the entire jury, in which all other jurors' responses were proper. The manner in which he answered precludes the conclusion that his intention was other than to find the defendant guilty of murder in the first degree. Furthermore, the judge's charge had spelled out the necessity of a unanimous verdict and the differences between the degrees of murder, as well as the consequences of each. Since only a verdict of murder in the first degree carries with it a death penalty and the necessity of a recommendation of mercy, and since the juror must have known this, his recommendation, "No death penalty," further confirms our conclusion.

4. The defendant contends that the judge erred by commenting to the jury on the length of time that the defendant had considered the crime. "In this case, there is evidence which, I suppose, if you accepted it, would warrant you in finding that he had considered this crime for a matter of two weeks. Of course, that is a long period of time." If there be any vice in the comment, and we fail to see it, the judge nevertheless specifically instructed the jurors not to take any fact that he might mention as proof of anything. On a close reading, the entire charge seems clear and impartial and just to both the Commonwealth and the defendant. *Buckley* v. *Frankel,* 262 Mass. 13, 18.

5. We find no error in the defendant's other complaint. At one point the judge questioned a psychiatric witness. This he has a right to do. In so doing, he exhibited no bias. *Commonwealth* v. *Oates,* 327 Mass. 497, 500. *Commonwealth* v. *Freeman,* 352 Mass. 556, 560. Nor was there error, as alleged by the defendant, in the length of time in which the jury deliberated or in the further instructions which the jurors were given during the course of their deliberations. The judge has discretion to control the conduct of the trial and he did so here without harm to the defendant. Mottla, Proof of Cases in Mass. (2d. ed.) § 597.

6. Other assignments of error have been considered as required by G. L. c. 278, § 33E. We find no error.

*Judgment affirmed.*