COMMONWEALTH *vs*. RICHARD A. DiMARZO.

Suffolk.     December 3, 1973.—February 28, 1974.

Present:   TAURO, C.J., REARDON, QUIRICO, HENNESSEY, & WILKINS, JJ.

*Practice, Criminal,* Venue, Charge to jury, View, Voir dire. *Jurisdiction,* Of crime. *Evidence,* Competency, Relevancy and materiality, Other offence. *Search and Seizure. Constitutional Law,* Search and seizure.

At the trial of an indictment for murder, where there was uncertainty as to the territorial subdivision in which the act was committed, it was proper for the judge to allow trial to proceed under G. L. c. 277, § 57A, to obviate any question of improper venue. [670-671]

At the trial of an indictment for murder, where the body of the deceased was found in Maine, there was sufficient evidence for the jury to find that the crime occurred in Massachusetts, and the judge gave an adequate charge to the jury on their responsibility to determine the location of the crime. [671-673]

At the trial of an indictment for murder, where the body of the deceased was found at a location in Maine, the judge did not commit error in allowing the jury to view such location, or in denying the defendant the opportunity to attend both the out-of-State view and an in-State view. [673-675]

The rights of the defendant in a murder case under the Fourth Amendment to the United States Constitution and art. 14 of the Declaration of Rights of the Massachusetts Constitution were not infringed when, prior to trial and pursuant to a court order, several pairs of his footwear desired by the Commonwealth for evidence were removed from his possession while he was confined in a penal institution; if he was entitled to some degree of Fourth Amendment protection, his rights were fully preserved by a complete adversary hearing on the matter before the judge. [675-676]

A judge who conducted a complete adversary hearing on a motion by the Commonwealth in a murder case for production of footwear of the defendant as evidence was not thereby disqualified from being the trial judge in the case. [676]

At the trial of an indictment for murder of a young woman, there was no error in the admission of evidence of assaults and beatings sustained by the victim over several months prior to the murder, for the purpose of showing a "continuing course of conduct" [676-677]; there was no error in the admission of testimony concerning certain bloodstains, con-

sistent with the victim's blood group, found in a house where the victim and the defendant resided [677]; the introduction by the Commonwealth in evidence of a butter knife was proper where it was demonstrated to be a possible means of inflicting burns which were discovered on the victim's body [677]; there was no error in refusal by the judge to hold a voir dire prior to the testimony of a pathologist [677-678]; and there was no error in the introduction by the Commonwealth, during cross-examination of the defendant, of evidence of his prior criminal convictions [678]; HENNESSEY, J., concurring in an opinion discussing at length the admission of prior criminal convictions [678-683].

INDICTMENT found and returned in the Superior Court on August 14, 1972.

The case was tried before *Roy, J.*

*Edward T. Dangel, III* (*Edward M. Dangel* with him) for the defendant.

*Stephen R. Delinsky,* Assistant District Attorney (*Roger A. Emanuelson,* Legal Assistant to the District Attorney, with him) for the Commonwealth.

REARDON, J. The defendant was tried on an indictment for first degree murder in a case taken pursuant to G. L. c. 278, §§ 33A-33G, was found guilty, and was sentenced to life imprisonment. The case is here on assignments of error which will be discussed seriatim. The jury could have found that following months of torture, monstrous treatment of the victim resulted in her eventual death. The details of the crime need not be recounted but such reference may be made to them as necessary in dealing with the several assignments. We consider the major assignments which have been argued to us in behalf of the defendant.

1. It is first alleged that there was error in permitting the Commonwealth to proceed under G. L. c. 277, § 57A, and by not allowing the defendant to litigate the issue of jurisdiction of the alleged crime. The statute reads: "A defendant shall not be discharged for want of jurisdiction if the evidence discloses that the crime with which he is charged was actually committed without the county or the territorial jurisdiction of the court in which he is being tried; provided, that the attorney general or the district attorney petitions to the court before proceeding with the trial for leave to pro-

ceed, stating that he is in doubt from the state of the evidence then in his possession as to whether or not the crime was committed within the county or the territorial jurisdiction of the court, and the court after hearing said petition orders the trial to proceed.'' The evidence disclosed that on January 9, 1971, the nude, beaten and frozen body of a young woman was found propped against a pine tree in Wells, Maine, there being snow on the ground, and that she was later identified as Constance Corcione who had last been seen alive three days previous at a house in Revere. The district attorney filed a petition in accordance with the above cited statute stating that ''he is in doubt from the state of the evidence now in his possession as to whether or not the crime alleged . . . was committed within the county or the territorial jurisdiction of the court,'' and sought leave to proceed, which the trial judge granted.

The defendant argues that such a procedure did not give the court jurisdiction over the crime if it were committed without the territorial borders of Massachusetts. With this contention we agree. In *Commonwealth* v. *Mannos,* 311 Mass. 94 (1942), it was made clear that the statute is concerned with venue and not with jurisdiciton. It was stated in the *Mannos* case at p. 103, that ''[t]he Legislature was undoubtedly authorized to regulate the place of trial of this particular class of cases where the place of the crime might be shown at the trial to be outside the county or the territorial jurisdiction of the court.'' But this does not make the procedure in this case invalid. Since there was uncertainty as to the territorial subdivision where the act was committed, it was proper for the judge to allow trial to proceed under the statute to obviate any question of improper venue.

With reference to the question of jurisdiction, there can be no doubt that the judge had no power to try the defendant for crimes committed out of State. The questions before us are (1) whether there was sufficient evidence for the jury to find that the crime of murder charged against the defendant occurred in Massachusetts and (2) whether the judge rendered an adequate charge to the jury on their responsibility

to determine the location of the crime. *Commonwealth* v. *Fleming,* 360 Mass. 404, 406-407 (1971). On this latter point the judge refused to grant an instruction requested by the defendant and an exception was taken.

As to the first point, there was ample evidence that the beatings which eventually led to the death of the victim took place in Massachusetts. A medical examiner testified at length and placed the time of death as being within seventy-two hours of the time of the autopsy, or as early as January 7, 1971. There was evidence that hair found in the trunk of the defendant's car matched the hair of the victim. There was evidence from a witness who saw the defendant on January 7, 1971, put a large duffel bag in the trunk of his car at the house in Revere where he and the victim both resided. In addition there was evidence that the victim did not die at the tree where her body was discovered. From the testimony of neighbors and others, the jury could have properly concluded that it was in Revere that the final indignity was visited upon the victim and death released her from her tortures. *Commonwealth* v. *Dorr,* 216 Mass. 314, 317 (1914). The question of the location of the crime was properly left to the jury which could have found that the homicide occurred in Revere. *Commonwealth* v. *Fleming, supra.*

Relative to the adequacy of the instruction, the judge charged the jury, "We have a law enacted by the Legislature which reads as follows: 'If a mortal wound is given or if other violence or injury is inflicted in any county of the Commonwealth by means whereof death ensues outside the Commonwealth, the homicide may be prosecuted and punished in the county where the act was committed,' and because of a paper which was filed in this case by the Commonwealth, I charge you as a matter of law that if you are satisfied beyond a reasonable doubt that a mortal wound was inflicted upon this victim anywhere within the Commonwealth of Massachusetts and death ensued, the offense may be punished here in this county." The charge properly covered the relevant issue. There was no need to give the instruction relative to the same material in the form requested

by the defendant. See *Commonwealth* v. *Kelley,* 359 Mass. 77, 92 (1971).

We conclude that it was proper to allow the Commonwealth to proceed under the statute and that the question of jurisdiction was adequately submitted to the jury.

2. An error is assigned in that the trial judge allowed an out-of-State view by the jury, and that the defendant was not allowed to be present at either the in-State or out-of-State jury views.

The taking of a view is a matter which was within the discretion of the trial judge, and we have hitherto held that the "right to order a view in furtherance of justice extends to places without as well as within the county where the crime is alleged to have been committed." *Commonwealth* v. *Gedzium,* 259 Mass. 453, 462 (1927), overruled on other grounds in *Connor* v. *Commonwealth,* 363 Mass. 572, 575 (1973), and cases cited. There is a question raised here as to the propriety of taking a view outside the State. The defendant argues that the judge was without authority to conduct such a view, being powerless to rule on defence or Commonwealth requests while in the State of Maine, that the court officers were without authority to supervise the jury while there, and that the transcript of the jury view proceedings was not official in that the court reporter was not properly sworn to act in Maine. The Commonwealth takes, of course, the opposite position. In a New Hampshire case, *Carpenter* v. *Carpenter,* 78 N. H. 440 (1917), a view was taken in Magnolia, Massachusetts, by a judge trying a case in New Hampshire without a jury. While the judge took the view without objection, the New Hampshire Supreme Court, in deciding that it was not improper for him to do so, pointed out that he was not holding court or trying the case in Massachusetts; that "[w]hen he was there the court was in recess." P. 448. The same result was reached by the Washington Supreme Court when a jury in a criminal case took an out-of-State view in *State* v. *Much,* 156 Wash. 403, 414-415 (1930). In the *Carpenter* case, *supra,* the court stated, at p. 451, that "[a] view therefore is a method of procedure

conducted in the absence of the court as an aid in the ascertainment of the truth from the physical act of inspection, which does not require the exercise of the judicial powers of a court at the time for its proper performance." This conforms with the general principles regarding in-State views stated in the Massachusetts decisions. See *Commonwealth* v. *Snyder,* 282 Mass. 401, 413-414 (1933), and cases cited, affd. sub nom. *Snyder* v. *Massachusetts,* 291 U. S. 97, 108 (1934). If such is the correct exposition of a view when taken within the State, it is also correct when the view is taken outside the State. It does not appear to us that there is basic vice in allowing under rare and appropriate cases out-of-State views. The function of the jury in such a case is simply to observe. Pictures of sites outside a State are frequently proper pieces of evidence, and it is difficult to distinguish between the view by a jury of the pictures of an out-of-State site and their own view by a visit to the site. In an unusual case the trial judge may in his discretion, given due consideration to the distances involved, properly conclude that the observable features of a site to be registered in the mind of a juror would be more comprehensively assimilated by his physical attendance there rather than by viewing pictures. We see no error in allowing the out-of-State view.

Nor is there error in denying the defendant the opportunity to attend the in-State or out-of-State views. We have said that the "whole subject rests in the sound discretion of the court. That discretion commonly and wisely has been exercised so that the defendant in a criminal case does not accompany the jury on a view." *Commonwealth* v. *Dascalakis,* 246 Mass. 12, 31 (1923). See *Commonwealth* v. *Webster,* 5 Cush. 295 (1850). It has been held that the Fourteenth Amendment to the United States Constitution does not assure to a defendant the privilege to be present on a view. *Snyder* v. *Massachusetts,* 291 U. S. 97, 108 (1934), affirming *Commonwealth* v. *Snyder,* 282 Mass. 401, 413 (1933). In the latter case it was said that "[i]t is now settled that a view is not such a taking of evidence as violates the constitutional right of the defendant 'to meet the witnesses

against him face to face.' " See *Commonwealth* v. *Belenski,* 276 Mass. 35, 40-41 (1931); *Berlandi* v. *Commonwealth,* 314 Mass. 424, 451 (1943), and cases cited. We conclude that there was no error in denying the defendant the privilege of being present at the views taken in Revere, Massachusetts, and Wells, Maine.

3. The Commonwealth pressed a pre-trial motion that the defendant submit his brown cowboy style boots, black boots and shoes for an examination. This motion was based on the discovery of footprints in the snow in the area where the body of the victim was discovered, and the Commonwealth sought to compare "for size and shape the boots and shoes of the defendant with the known measurements of the footprints." The judge ordered the production of this or other footwear, and the defendant argues that this was a violation of his rights under the Fourth Amendment to the United States Constitution and art. 14 of the Declaration of Rights of the Massachusetts Constitution. At this time the defendant was in the Correctional Institution at Walpole. Thereafter there were removed from his possession five pairs of footwear including one pair of moccasins and three pairs of sneakers.

We see no error in the order of production of these goods. As was stated in *Schmerber* v. *California,* 384 U. S. 757, 767 (1966), "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." It cannot be said that a public correctional institution conveys a sufficient right of personal privacy to deprive the Commonwealth of needed evidence. It was noted in *Lanza* v. *New York,* 370 U. S. 139, 143 (1962), that "to say that a public jail is the equivalent of a man's 'house' or that it is a place where he can claim constitutional immunity from search or seizure of his person, his papers, or his effects, is at best a novel argument." A prison cannot be said to demonstrate attributes of the privacy of a house. *Commonwealth* v. *Dougherty,* 343 Mass. 299, 305 (1961). *United States* v. *Hitchcock,* 467 F. 2d 1107 (9th Cir. 1972), cert. den. sub nom. *Hitchcock* v. *United*

*States,* 410 U. S. 916 (1973). Not only was it constitutionally valid but it was also fair.

As the Commonwealth points out, prior to the issuance of the order there was a complete adversary hearing before the judge attended by both the defendant and his counsel at which the rights of the defendant received protection more complete than if a search warrant had been sought, and there was sufficient probable cause for the order to be found in two affidavits submitted by the police relating to the evidence against the defendant and the importance of the footprints in the snow. Even assuming arguendo that the defendant in custody was entitled to some degree of Fourth Amendment protection, his rights were fully preserved by this procedure. Although the formal attributes of the issuance of a warrant were lacking, the substance of the procedure was sufficient. Reasonable searches should not be condemned on excessively technical grounds. Cf. *Commonwealth* v. *Wilbur,* 353 Mass. 376 (1967), cert. den. sub nom. *Wilbur* v. *Massachusetts,* 390 U. S. 1010 (1968); *Commonwealth* v. *Von Utter,* 355 Mass. 597 (1969). Furthermore, the other evidence adduced at trial was sufficient to enable the jury to reach their verdict even if they had not been informed that the boots produced in court were consistent with the footprints in the snow.

Nor is there merit in the defendant's argument that the judge, having passed on the motion for production of footwear, was disqualified from sitting as the trial judge. We discern from the transcript no taint of bias or prejudice on the part of the judge. In fact it may be said that he conducted himself with exceeding great patience and fairness in the face of a taxing trial producing as it did a myriad of exceptions, hundreds of which were without any merit whatsoever.

4. We consider several assignments of error bearing on evidential points raised during the trial. (a) The defendant attacks the admission of evidence of assaults and beatings sustained by the victim in the four to seven months prior to the murder. Such evidence came from the lips of a number of witnesses who testified to the physical condition of the victim

in the months prior to her death. On this type of evidence we have held that a continuing course of conduct may have a bearing on the motive of a crime. *Commonwealth* v. *Russ,* 232 Mass. 58, 71-72 (1919). See *Commonwealth* v. *Holmes,* 157 Mass. 233 (1892), wherein there was a question of admissibility of evidence of threats and acts of violence over a considerable period of time by the defendant towards his wife culminating in a homicide. While there was no direct evidence that the defendant perpetrated these attacks, it was permissible to present evidence which could lead to that conclusion. The evidence was there admitted not "for the purpose of showing separate and independent acts and threats, but for the purpose of showing a course of conduct." P. 240. See *Commonwealth* v. *Quinn,* 150 Mass. 401 (1890); *Commonwealth* v. *Bartolini,* 299 Mass. 503, 510 (1938), cert. den. sub nom. *Bartolini* v. *Massachusetts,* 304 U. S. 565 (1938); *Commonwealth* v. *Cutler,* 356 Mass. 245, 248-249 (1969). There was no error in the admission of this evidence. (b) Error is also alleged in the admission of testimony concerning certain bloodstains found in the house in Revere where the victim and the defendant resided, which bloodstains were consistent with the victim's blood group. The Commonwealth contends quite properly that the evidence was adduced as tending to show that the assaults and beatings which ended in the death of the victim occurred in that house. The evidence is competent in that it correlated with other evidence introduced to form the web of circumstances which led the jury to their verdict. *Commonwealth* v. *Durkin,* 257 Mass. 426 (1926). Likewise the introduction by the Commonwealth in evidence of a butter knife was proper since it was demonstrated to be a possible means of inflicting the burns which were discovered on the victim's body. See *Commonwealth* v. *Teregno,* 234 Mass. 56 (1919); *Commonwealth* v. *Bonomi,* 335 Mass. 327, 341 (1957). (c) There was no error in the refusal by the judge to hold a voir dire hearing prior to the testimony of the pathologist. This was a matter of discretion, and the denial was reasonable. It is not customary to hold such a hearing on testimony by

medical experts and no good purpose would be served in so doing. See *Commonwealth* v. *Nassar,* 354 Mass. 249, 259 (1968), and cases cited. (d) During cross-examination of the defendant the Commonwealth introduced evidence of his prior criminal convictions. The defendant argues that the use of this evidence prejudiced the jury and that he was, therefore, deprived of the fair trial guaranteed by the United States Constitution. Use of evidence of prior convictions to impeach the credibility of a witness is specifically authorized by G. L. c. 233, § 21, and does not infringe on the constitutional rights of defendants. *Spencer* v. *Texas,* 385 U. S. 554, 560-563 (1960). *Commonwealth* v. *Ladetto,* 353 Mass. 746 (1967). There was no error. (e) We have considered all other assignments of error argued to us by the defendant and find each of them to be without merit. There is no necessity to discuss them.

5. Consonant with the duty laid upon us by G. L. c. 278, § 33E, we have reviewed the lengthy transcript in this case and are satisfied that the verdict was not against the law or the weight of evidence, and that no reason exists which requires in justice any disposition other than the one which is before us. We wish to add that the claim of 1,804 exceptions lodged by counsel for the defendant during the course of trial, meritless as the vast majority of them were, served only to place a tax on the patience of judge and jury and were not required by the need that the rights of the defendant be protected.

*Judgment affirmed.*

HENNESSEY, J. (concurring). I concur in the court's affirmation of this conviction. However, I believe that discussion is advisable as to the defendant's claim that there was constitutional error in the admission in evidence of his prior conviction of carnal abuse of a female child. The prior conviction evidence was received in a form and manner appropriate under the statute, G. L. c. 233, § 21, and the judge in his instructions appropriately limited the application of the evidence to the issue of the defendant's credibility.

Commonwealth *v.* DiMarzo.

Presumably the defendant contends that he was denied due process of law. Even if that were true, I would find the error to be harmless, in view of the overwhelming evidence of the defendant's guilt apart from this prior conviction.

More important, I conclude that it has apparently been established that there is no error under the United States Constitution in the admission of such evidence. *Spencer* v. *Texas,* 385 U. S. 554, 560-562 (1967).[1] This court likewise has found no unconstitutionality both in the instant case, and in prior cases. See *Commonwealth* v. *Ladetto,* 353 Mass. 746 (1967). See also *Commonwealth* v. *Subilosky,* 352 Mass. 153 (1967); *Commonwealth* v. *West,* 357 Mass. 245 (1970). In the light of these precedents, it is perhaps of little importance that I may not be persuaded that there can never be constitutional significance in a case where the proof of a defendant's prior convictions works great prejudice against him on the issue of guilt. See generally, note, 37 U. of Cinn. L. Rev. 168 (1968).

Nevertheless, apart from constitutional issues, the effect of the application of G. L. c. 233, § 21, deserves attention. I believe that common sense and experience have led trial judges and trial lawyers to conclude that jurors do in fact regard the prior convictions of the defendant in many cases

---

[1]However, it may be argued that the rationale of the *Spencer* case has been undercut by subsequent Supreme Court decisions and that the issue is thus still open. See *Bruton* v. *United States,* 391 U. S. 123 (1968); *Chambers* v. *Mississippi,* 410 U. S. 284 (1973). But see *McGautha* v. *California,* 402 U. S. 183, 209 (1971), which cites the *Spencer* case approvingly.

It is also noteworthy that the proposed Federal Rules of Evidence (as approved by the Supreme Court November 20, 1972) ([November 21, 1972] 41 U. S. L. Week 4021), contain a provision for the admission of prior conviction evidence similar to the relevant Massachusetts statute. Rule 609, but see Rule 403, allowing the exclusion of relevant evidence in the discretion of the trial judge where the danger of unfair prejudice substantially outweighs its probative value. The rules were submitted to the Congress in accordance with the provisions of 18 U. S. C. §§ 3771 and 3772 (1970), and 28 U. S. C. §§ 2072 and 2075 (1970). Their effective date has been delayed by statute. P. L. 93-12 (March 30, 1973), 87 Stat. 9. Most recently, the Subcommittee on Criminal Justice of the House Judiciary Committee has proposed amendments to the rules, including a revision of Rule 609 to limit automatic admissibility of prior conviction evidence to crimes involving dishonesty or false statement, with evidence of other felonies to be admissible unless the judge determines the danger of unfair prejudice outweighs its probative value. ([July 17, 1973] 42 U. S. L. Week Supp.)

as proof of guilt. Further, experience teaches that the problem is one of frequent occurrence.

Even in a case where a trial judge is convinced that the admission of a defendant's prior convictions will result in an injustice, he has no discretion to exclude the evidence since this court has ruled that the only option under the statute resides in the prosecutor and not the judge. *Commonwealth* v. *West,* 357 Mass. 245, 248-249 (1970). The prejudice to the defendant, as often as not, is that he dares not exercise his right to testify in his own defence in the light of his knowledge that prior convictions will be used in cross-examination. Cautionary instructions to the jury concerning the defendant's privilege not to testify can be of little assistance to him in such a case.

What is involved here is the necessity of fairness in trials. Consequently, questions of constitutional error aside, there is significance in the rulings of the Supreme Court on the subject of fair trials. Due process of law is afforded to every defendant under the Fourteenth Amendment, through which the Sixth Amendment confers the right to a trial by an impartial jury. The defendant has similar guaranties under art. 12 of the Declaration of Rights of the Constitution of the Commonwealth. These guaranties are violated, and the defendant is deprived of a fair trial, when proceedings give rise to a probability of prejudice. *Estes* v. *Texas,* 381 U. S. 532, 542-543 (1965). In recent years the Supreme Court in reversing criminal convictions, has lent frequent emphasis to the guaranties of due process of law and a fair trial before an impartial jury. *Ward* v. *Monroeville,* 409 U. S. 57 (1972). *Webb* v. *Texas,* 409 U. S. 95 (1972). *Cool* v. *United States,* 409 U. S. 100 (1972). *Ham* v. *South Carolina,* 409 U. S. 524 (1973). *Gagnon* v. *Scarpelli,* 411 U. S. 778 (1973). *Wardius* v. *Oregon,* 412 U. S. 470 (1973). That court has also found a denial of due process in the application of certain unique rules of evidence in a criminal trial. *Chambers* v. *Mississippi,* 410 U. S. 284 (1973).

The danger of prejudice most clearly arises when the prior convictions are similar in nature to the indictments on trial.

In this case, for example, the essential facts are that the Commonwealth's proof under the indictment was of a long course of sexual abuse of a young woman, culminating in her murder, and the prior conviction concerned carnal abuse of another young female. It is firmly and wisely established in our law that no defendant should be convicted of a crime by proof of his reputation or propensity to commit similar crimes. *Miller* v. *Curtis,* 158 Mass. 127 (1893). *Commonwealth* v. *Banuchi,* 335 Mass. 649, 654 (1957). *Commonwealth* v. *Chalifoux,* 362 Mass. 811, 815-816 (1973). However, in *Spencer* v. *Texas,* 385 U. S. 554, 560-562 (1967), the Supreme Court held that prior convictions of a defendant could properly be received in evidence where it was demonstrated that an interest of the State was served and the admissibility had been established by long-standing law. It was stated that the defendant's interests are protected by limiting instructions.

It is reasonable for us to be confident that in most cases limiting instructions accomplish their intended purpose. Nevertheless, in cases like the instant one, where the evidence subject to limitations has an extremely high potential for unfair prejudice, we have a duty to be skeptical as to the effectiveness of limiting instructions. They have been characterized by Judge Learned Hand as "the recommendation to the jury of a mental gymnastic which is beyond, not only their power, but anybody's else." *Nash* v. *United States,* 54 F. 2d 1006, 1007 (2d Cir. 1932). "The naive assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction." *Krulewitch* v. *United States,* 336 U. S. 440, 453 (1949) (Jackson, J., concurring).

The case of *Bruton* v. *United States,* 391 U. S. 123, 128-137 (1968), similarly repudiates the assumption that limiting instructions can be effective. In that case, at a joint trial, the confession of one defendant which inculpated the other was admitted in evidence with instructions to the jury that the proof was received against only the confessor. The Supreme Court, in reversing the conviction of the prejudiced defend-

ant, relied upon his right of confrontation under the Sixth Amendment, since he could not cross-examine the confessor, who did not testify. In my view the result could just as soundly be premised upon broader grounds of due process in that the proceedings, including the inability to cross-examine, denied him a fair trial before an impartial jury. The reasoning of the *Bruton* case is highly relevant here since that case recognized the futility, even the absurdity, of expecting a jury in some circumstances to conform to limiting instructions.

Prior convictions, even as applied only to the credibility issue, have little or no probative value in most instances. Prior crimes of violence, in particular, have no discernible bearing upon a defendant's reliability for truthfulness. In the *Bruton* case, the confession had strong probative force against the confessor, and the "viable alternative" to preserve its valid purpose in proof was to sever the trials of the codefendants. 391 U. S. at 134. There is only one appropriate remedy when evidence of a defendant's prior conviction is offered which is highly prejudicial and which has little or no probative value even upon the limited issue for which it is received. That remedy is to exclude it, but in this Commonwealth the judge has no power to exclude it. *Commonwealth* v. *West,* 357 Mass. 245 (1970).

If the statute allowed discretion in the trial judge, injustice could be avoided. For example, judges routinely and scrupulously direct trial proceedings so as to avoid premature jury awareness of alleged prior convictions where such prior convictions are part of the gravamen of the indictment. G. L. c. 278, § 11A. Cf. G. L. c. 94, §§ 212A, 217; c. 265, §§ 13B, 22A, 23; c. 266, § 40; c. 279, § 25. Alleged abuse of discretion would be subject to appellate review. Assuming that this court continues to regard the rulings in the *West* case as correct, and declines to overrule that decision, the only amelioration of the problem appears to lie in the most careful attention by trial judges to the limiting instructions. For example, see the instruction given in *Commonwealth* v. *Bumpus,* 362 Mass. 672, 682-683 (1972). In some instances,

too, district attorneys may find it consistent with justice to refrain from offering proof of certain prior convictions. Otherwise, the matter lies with the Legislature. It has been stated that some possible legislative solutions are: (1) to allow no impeachment by conviction when the witness is the accused: (2) to allow proof only of conviction for perjury and similar crimes reflecting untruthfulness; (3) to exclude impeachment by conviction if the crime is similar to that for which the defendant is presently being tried; (4) to allow conviction evidence only if the accused first introduces evidence of character for truthfulness; (5) to leave the matter to the discretion of the trial judge. McLaughlin & Leonard, Evidence, 1969 Ann. Surv. of Mass. Law, § 19.1. The Legislature has previously acted to avoid prejudice to the defendant in the similar situation where a prior offence is an element of the current indictment. G. L. c. 278, § 11A. More recently, by enacting G. L. c. 278, § 2A (St. 1968, c. 721, § 2), the Legislature required that conspiracy and related substantive crimes must be separately tried. This statute cured the prejudice resulting when the jury which decides the substantive charge hears evidence admissible only as to the conspiracy charge.