COMMONWEALTH vs. PEDRO DIAZ.

Suffolk. November 4, 1980. — March 4, 1981.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & ABRAMS, JJ.

*Evidence*, Prior conviction. *Witness*, Impeachment. *Practice, Criminal*, Impeachment by prior conviction, Double jeopardy, Duplicitous convictions. *Constitutional Law*, Impeachment by prior conviction, Double jeopardy. *Narcotic Drugs*.

The application of G. L. c. 233, § 21, to permit a prosecutor to impeach a defendant by introducing his prior convictions, which were of a crime identical with one of those charged, did not deny the defendant's right to a fair trial as guaranteed by art. 12 of the Massachusetts Declaration of Rights. [75-80]

Discussion of a judge's discretion to exclude evidence of a prior conviction to impeach a defendant in a criminal case as set forth in the Proposed Massachusetts Rules of Evidence (1980). [80-82]

A defendant convicted on indictments under G. L. c. 94C, § 32, for unlawful distribution of a controlled substance and for possession of a controlled substance with intent to distribute it did not establish a double jeopardy violation where the charges were based on facts showing that the defendant had completed one heroin sale and was holding a separate cache of the drug for future distributions. [82-85]

INDICTMENTS found and returned in the Superior Court Department on September 22, 1978.

The cases were tried before *Linscott*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Ellen A. Howard* for the defendant.

*Charles M. Campo*, Assistant District Attorney, for the Commonwealth.

KAPLAN, J. This appeal presents questions about the impeachment of a defendant in a criminal case through evidence of his prior convictions, and about double jeopardy in the sense of multiple punishments. Finding no error, we affirm the judgments of conviction.

Upon indictments for unlawful distribution of a controlled substance (G. L. c. 94C, § 32, as before 1980 amendment), and for possession of a controlled substance with intent to distribute it (*id.*), the drug being heroin in each instance, the defendant was tried by jury and found guilty of both charges.

We recount the evidence. Detective John Ulrich of the Boston police was the sole witness for the Commonwealth. He testified that about 6 P.M., April 2, 1978, he and Detective Al LaFontaine, both in plain clothes, concealed themselves some distance back of a three-story building located near the corner of Washington and School Streets in the Egleston Square area in Boston. About a half hour later the detectives observed the defendant and one Mendez arrive and stand on the corner near a variety store at street level of the building. Shortly a man approached them, spoke to the defendant, produced what appeared to be currency (in denominations that Ulrich could not discern), counted it, and passed it to the defendant. The defendant walked in the direction of the detectives along the School Street side of the building until he came to three trash cans twenty to thirty feet from the detectives' place of concealment opposite the junction of School Street with Egleston Street.[1] Opening the middle trash can, the defendant took out two cereal boxes, then a piece of brown paper to which were taped several small bags. The defendant detached one of the bags, walked back, and handed the bag to the man who appeared to smell it and then put it in his pocket. The man crossed to the other side of School Street and began walking down that street toward the next crossing at Egleston Street. At the same time the defendant was continuing his walk toward the store front. Ulrich crossed School Street, confronted the man, and identified himself as a police officer.

[1] On cross-examination Ulrich admitted he had testified at the probable cause hearing that the distance was fifty yards, but he said he was estimating the total distance from the junction of School and Egleston streets to the corner of School and Washington streets, not to the middle trash can. Ulrich testified that visibility was good throughout the episode.

The man dropped the bag and ran down Egleston Street. Ulrich picked up the bag and went in pursuit, but gave up when he lost sight of his quarry.

Ulrich rejoined LaFontaine and they resumed surveillance. The defendant was back with Mendez at the store front. As the defendant and Mendez noticed the detectives emerging and walking toward them, they ran into the store. The detectives followed and arrested them.

The detectives then led the defendant and Mendez to the middle trash can. Ulrich opened it and removed the two cereal boxes. Beneath was a plastic bag with what appeared to be marihuana,[2] and seven small plastic bags containing a brown powder; these were like the bag retrieved by Ulrich during the chase. The powder in the seven bags tested officially as heroin, as did the powder in the retrieved bag.

At the close of the Commonwealth's case, counsel for the defendant moved to exclude from evidence the defendant's two prior convictions for possession of heroin with intent to distribute. The prosecutor resisted the motion, stating that he would "more than likely" introduce the convictions to impeach the defendant's credibility if the defendant testified. The judge denied the motion "as a matter of discretion." Counsel stated for the record that because of this ruling he would not call the defendant. The defendant introduced no evidence and guilty verdicts followed. The judge sentenced the defendant to two years in the Suffolk County house of correction on each indictment, the sentences to run consecutively.

1. *Impeachment by prior convictions.* By the express terms of G. L. c. 233, § 21, described in the margin,[3] the

---

[2] This was not made the basis of any charge, nor was any analysis of it introduced at the instant trial.

[3] Section 21 reads in part: "The conviction of a witness of a crime may be shown to affect his credibility, except as follows:

". . . .

"Third, The record of his conviction of a felony upon which a state prison sentence was imposed shall not be shown for such purpose after ten years from the date of expiration of the minimum term of imprisonment

prosecutor was entitled to introduce the defendant's prior convictions if he chose to testify. The defendant contends that the statute is unconstitutional as applied to an accused (not merely a witness) in the present circumstances — where the prior convictions were of a crime identical with one of those charged, and that crime did not encompass the uttering of falsehood and thus was not highly demonstrative on the question of credibility.[4] In such a case, the defendant says, the likelihood that a jury, despite limiting instructions, will use the convictions as a basis for inferring that the accused committed the crime charged, and not just as bearing on his credibility, may well induce him to forgo the exercise of his right to take the stand; but if he does testify, he may well suffer from the unjust jury inference mentioned.[5] The constitutional guarantee claimed to be offend-

imposed by the court, unless he has subsequently been convicted of a crime within ten years of the time of his testifying."

Section 21 provides that in case of conviction of felony with other disposition, the first ten-year period starts from the time of the disposition. Record of conviction of misdemeanor is not to be shown after five years from sentence, unless the witness has subsequently been convicted of a crime within five years of his testimony. Record of a conviction of a traffic violation on which only a fine was imposed is not to be shown unless the witness has subsequently been convicted of a crime within five years of testifying.

[4] At oral argument, defendant's counsel seemed to assert that the past convictions were not relevant at all as to credibility, but the brief does not go so far.

[5] The defendant makes the further claim that the statute, when it operates on a defendant who chooses to take the stand, compels self-incrimination, in violation of the guarantee of art. 12 of the Declaration of Rights, that "[n]o subject shall . . . be compelled to accuse or furnish evidence against himself." The answer is that the suggested privilege is waived by the choice to testify. See Brown v. United States, 356 U.S. 148, 154-155 (1958) (waiver of analogous Federal constitutional privilege). Besides, all the Commonwealth asks of the defendant in respect to the record, when it puts the conventional question to him, is whether he is the person mentioned in the record, and the answer, when affirmative, is so far a "foregone conclusion," adding "little or nothing to the sum total of the Government's information," that no serious constitutional issue of self-incrimination is raised. See Fisher v. United States, 425 U.S. 391, 411 (1976); Commonwealth v. Hughes, 380 Mass. 583, 589-592, cert. denied, 449 U.S. 900 (1980).

ed when one in the defendant's predicament refrains from testifying is that expressed in our Declaration of Rights, art. 12, of "every subject . . . to produce all proofs, that may be favorable to him; . . . and to be fully heard in his defense by himself, or his counsel," see *Commonwealth* v. *Mangan*, 293 Mass. 531, 533 (1936); when one does testify, it is the art. 12 guarantee that "no subject shall be . . . deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land," which implies the right to a "fair trial with an impartial jury." *Commonwealth* v. *Brown*, 364 Mass. 471, 472 (1973). See *Commonwealth* v. *Soares*, 377 Mass. 461, 473, 477, 492, cert. denied, 444 U.S. 881 (1979); *Commonwealth* v. *Howard*, 367 Mass. 569, 572 (1975); *Commonwealth* v. *DiMarzo*, 364 Mass. 669, 680 (1974) (Hennessey, J., concurring). It might seem that if the defendant in fact did not testify, he could claim to be aggrieved only on the first basis, the burdening of his right to take the stand. Yet we have in the past not so confined a defendant and have allowed him both branches of the argument. See *Commonwealth* v. *Chase*, 372 Mass. 736, 749 (1977). The two matters are linked; both relate to the "fundamentals of a fair trial" guaranteed by art. 12, see *Brown* v. *Commonwealth*, 335 Mass. 476, 482 (1957); *Pugliese* v. *Commonwealth*, 335 Mass. 471, 475-476 (1957), and the argument is in essence that the statute, having the effects or probable effects described, is not justified by a sufficient State interest.

The argument finds no support in the due process clause of the Federal Constitution which embraces guarantees analogous to those mentioned under our art. 12. We take this to be the effect of the discussion in *Spencer* v. *Texas*, 385 U.S. 554, 560-561 (1967), acknowledging that a State could constitutionally conclude that past convictions have probative value in the assessment of credibility. The Court indicated that a trial judge could obviate any unfairly prejudicial tendency of such evidence by instructing the jury to confine this material to its proper function or by exercising discretion to exclude it altogether where it might be "par-

ticularly prejudicial."[6]  Subsequent cases have read *Spencer* as foreclosing any Fourteenth Amendment attack on impeachment by prior convictions;[7] and it is noteworthy that the language of *Spencer* about discretion to exclude has been taken as merely "descriptive" of the practice in many States, and not as suggesting any due process infirmity when the statute or rule allowing impeachment (and the practice thereunder) gives the trial judge no discretion to exclude the convictions when offered.[8]

The defendant does not advance any argument on the Federal plane, rather he urges us to read the guarantees of art. 12 more expansively than their Federal due process counterparts.  We have recognized the peculiar danger of unfair jury inferences when the conviction introduced is of a crime similar to that being tried,[9] and noted also the relative significance of convictions of the different kinds of crimes in the appraisal of a defendant's propensity for speaking the

---

[6] *Spencer* upheld a Texas recidivist statute against due process attack, and discussed by way of analogy the use of prior convictions to impeach a defendant testifying in his own behalf.  There was a dissent by Warren, C.J., but it did not relate to this kind of impeachment.

[7] See *United States* v. *Belt,* 514 F.2d 837, 846-848 (D.C. Cir. 1975); *United States* v. *Bailey,* 426 F.2d 1236, 1242 (D.C. Cir. 1970); *Hubbard* v. *Wilson,* 401 F. Supp. 495, 499 (D. Colo. 1975); *Dixon* v. *United States,* 287 A.2d 89, 93-94 (D.C. Ct. App.), cert. denied, 407 U.S. 926 (1972); *State* v. *Prather,* 290 So. 2d 840, 842 (La. 1974); *Nance* v. *State,* 7 Md. App. 433, 442 (1969), cert. denied, 398 U.S. 954 (1970); *Commonwealth* v. *Bighum,* 452 Pa. 554, 563 (1973); *State* v. *Ruzicka,* 89 Wash. 2d 217, 228-229 (1977) (en banc).  We have cited *Spencer* ourselves in rejecting constitutional challenges to G. L. c. 233, § 21.  See *Commonwealth* v. *Chase,* 372 Mass. 736, 749 (1977); *Commonwealth* v. *Boyd,* 367 Mass. 169, 174 (1975); *Commonwealth* v. *DiMarzo,* 364 Mass. 669, 678 (1974); *id.* at 679 (Hennessey, J., concurring); *Commonwealth* v. *Ladetto,* 353 Mass. 746 (1967).

[8] See *Dixon* v. *United States, supra* at 94-95; *United States* v. *Belt, supra* at 847-850 (citing *Dixon*).

[9] See *Commonwealth* v. *Chase, supra* at 750; *Commonwealth* v. *Sheeran,* 370 Mass. 82, 88-89 (1976); *Commonwealth* v. *Delorey,* 369 Mass. 323, 331 (1975) (Hennessey, J., concurring); *Commonwealth* v. *DiMarzo, supra* at 680-681 (Hennessey, J., concurring).  Cf. *Walter* v. *Bonito,* 367 Mass. 117, 124 (1975).

truth.[10]   Nevertheless we have rejected constitutional challenges to G. L. c. 233, § 21, as well by a defendant who chose not to take the stand for fear of impeachment, *Commonwealth* v. *Chase, supra,* as by a defendant who took the stand and was impeached. *Commonwealth* v. *Leno,* 374 Mass. 716, 717 (1978).[11] The two cited cases each involved a situation like that presented here: the prior conviction was of a crime similar to the one charged and did not bear directly on credibility, as perjury or fraud might do.[12] Our consistent position, then, most recently stated in *Leno,* has been that the statute in its application — with the restrictions provided by the statute on the admission of convictions remote in time (see note 3) and with appropriate use by the trial judge of limiting instructions — strikes a constitutional balance between the possibility of unfairness to defendants, and the desirability of making useful information available to the trier.[13] Other State courts have taken the same general line.[14]

---

[10] See *Commonwealth* v. *Bumpus,* 362 Mass. 672, 683 (1972), judgment vacated on other grounds, 411 U.S. 945 (1973), aff'd on rehearing, 365 Mass. 66 (1974), reviewed on petition for habeas corpus sub nom. *Bumpus* v. *Gunter,* 452 F. Supp. 1060 (D. Mass. 1978); *Commonwealth* v. *Chase, supra* at 749-750.

[11] See also *Commonwealth* v. *Sheeran, supra* at 88; *Commonwealth* v. *Boyd,* 367 Mass. 169, 174 (1975); *Commonwealth* v. *DiMarzo, supra* at 678; *Commonwealth* v. *Ladetto, supra.*

[12] In *Chase* the defendant was convicted of murder in the first degree and the prior conviction available for impeachment — but never introduced as the defendant did not testify — was also for murder. In *Leno* the defendant was convicted of rape and assault with intent to rape, and was impeached by prior convictions for kidnapping and rape. A limiting instruction was given.

[13] *Leno,* 374 Mass. at 717, did imply that in the extraordinary case where the impeaching conviction arose out of the same events as the crime charged, a constitutional problem might arise. The problem might be avoided if the jury were not made aware of the link between the conviction and the current indictment. See *Commonwealth* v. *Gallarelli,* 372 Mass. 573, 580 (1977).

[14] See *State* v. *Mayes,* 110 Ariz. 318, 318-319 (1974); *People* v. *Layton,* Colo.   ,   (1980) (612 P.2d 83, 84 [Colo. 1980])(en banc); *Dixon*

In the *Chase* case, 372 Mass. at 750, qualifying our decision in *Commonwealth* v. *West*, 357 Mass. 245, 249 (1970), and building upon thoughts expressed in *Commonwealth* v. *DiMarzo*, 364 Mass. 669, 680-682 (1974) (Hennessey, J., concurring), and *Commonwealth* v. *Delorey*, 369 Mass. 323, 331 (1975) (Hennessey, J., concurring), we said that "we would not deny the right of a judge to avoid any question of unfairness by excluding such evidence in a situation where the likely prejudice to the defendant is most intense." However, this was not put in terms of reviewable discretion, and we have held that the refusal of a trial judge to exercise the "right" mentioned in *Chase* is not a basis for appeal. See *Leno, supra* at 718; *Commonwealth* v. *Tabor*, 376 Mass. 811, 824 (1978).

The "right" spoken of in *Chase* would be reworked as "discretion" in rule 609(a) of the recently Proposed Massachusetts Rules of Evidence (July 1980): "(a) *General rule.* For the purpose of impeaching the credibility of a witness, evidence that he has been convicted of a crime is admissible. In a criminal case, the court shall have discretion to exclude evidence of a prior conviction offered to impeach the credibility of the accused if it finds that its probative value is outweighed by the danger of unfair prejudice. There shall be no discretion to exclude a prior conviction offered to impeach the credibility of any other witness. A plea of guilty or a finding or verdict of guilty shall constitute a conviction." (The parallel Federal rule is referred to in the margin.)[15] In assessing the "intensity" of the prejudice under

v. *United States*, 287 A.2d 89, 92-94 (D.C. Ct. App.), cert. denied, 407 U.S. 926 (1972); *Johnson* v. *Florida*, 380 So. 2d 1024, 1026 (Fla. 1979); *State* v. *Kelley*, 120 N.H. 14, 18-19 (1980); *State* v. *Prather*, 290 So. 2d 840, 841-842 (La. 1974); *Nance* v. *State, supra* at 441-443; *Coats* v. *State*, 589 P.2d 693, 697 (Okla. Ct. Crim. App. 1978); *Commonwealth* v. *Bighum, supra* at 562-567; *State* v. *Ruzicka, supra* at 228-235. But see *State* v. *Santiago*, 53 Haw. 254, 256-261 (1971).

[15] Federal rule 609(a) allows impeachment of a witness by prior conviction of a crime punishable by death, or a prison term of over one year, if

*Chase* or matching "probative value" and "unfair preju-
dice" under such a rule as 609(a), a judge might look to the
factors mentioned by Burger, J., in *United States* v. *Gor-
don*, 383 F.2d 936, 940-941 (D.C. Cir. 1967), cert. denied,
390 U.S. 1029 (1968), including: (i) the bearing of the par-
ticular conviction on credibility; (ii) the defendant's history
following the conviction; (iii) the resemblance of the prior
offense to the pending charge, with consideration of
whether a dissimilar prior conviction should be admitted in
preference to a similar one; (iv) the importance of the de-
fendant's taking the stand; (v) the weight of the factor of
the defendant's credibility in the decision of the issues of
fact. And see the comments on those elements in 3 J. Wein-
stein & M. Berger, Evidence par. 609[03], at 609-65 to
609-72 (1978). As to the time when a ruling should be made
on a motion by a defendant to bar his impeachment through
prior convictions, it is desirable, if feasible, that this should
occur at an early moment, since it may affect counsel's con-
duct of the trial all down the line. Federal courts have
made this point, see *United States* v. *Oakes*, 565 F.2d 170,
171 (1st Cir. 1977); *United States* v. *Cook*, 608 F.2d 1175,
1186 (9th Cir. 1979), cert. denied 414 U.S. 1034 (1980);
*United States* v. *Jackson*, 405 F. Supp. 938, 942 (E.D.N.Y.
1975) (Weinstein, J.); 3 J. Weinstein & M. Berger, Evi-
dence, *supra* par. 609[03a], at 609-79 (1978), as have some
State courts, see *State* v. *Bennett*,      R.I.     ,      (1979)

---

the probative value of the impeachment outweighs its prejudicial effect on
the accused; or by prior conviction of a crime involving dishonesty or false
statement regardless of punishment and without a balancing of probative
value against prejudicial effect, although a trial judge may still be able to
exclude such evidence pursuant to his general powers under Federal rule
403. Compare 3 J. Weinstein & M. Berger, Evidence par. 609[03a], at
609-73 (1978) with *United States* v. *Toney*, 615 F.2d 277, 280 (5th Cir.
1980).

Paragraph (c) of the proposed Massachusetts rule states: "Evidence of
a conviction is not admissible under this rule after fifteen years from the
date of conviction, or five years from the date of expiration of the
minimum term of confinement imposed by the court for that conviction,
whichever is greater." The time limits adopted in paragraph (b) of the
Federal rule are materially different.

(405 A.2d 1181, 1187 [R.I. 1979]); *People* v. *Sandoval*, 34 N.Y.2d 371, 375 (1974); *State* v. *Martin*, 217 N.W.2d 536, 543, 544 (Iowa 1974). True it is that the significant factors, like those set out in *United States* v. *Gordon, supra,* would be best appreciated after the defendant had taken the stand and testified on direct (see *United States* v. *Toney*, 615 F.2d 277, 280 [5th Cir. 1980] [Tjoflat, J., concurring]; *United States* v. *Cook, supra* at 1189-1190 [Kennedy, J., dissenting in part]), but that assumes a risky commitment by the defendant. A judge can prepare himself for an early ruling by inquiring about the nature of the proof the parties intend to present, including what the defendant himself would offer if he took the stand; and an advance ruling may be made contingent on the evidence coming forward as thus indicated. *United States* v. *Oakes, supra* at 171-172. *United States* v. *Cook, supra* at 1186. *United States* v. *Jackson, supra* at 942-943.

2. *A question of double jeopardy.* General Laws c. 94C, § 32, describes (although in a single sentence) the distinct crimes, among others, of distributing a controlled substance, and of possessing such a substance with intent to distribute it.[16] In the present case the defendant was convicted and sentenced for distributing one bag of heroin, the one handed to the fleeing man, and of possessing seven other bags of heroin with intent to distribute them. He claims he was doubly punished for the same offense, in violation of a guarantee of the Fifth Amendment, applied to the States through the Fourteenth, see *North Carolina* v. *Pearce*, 395 U.S. 711, 717 (1969), and of a rule of our common law, see *Gallinaro* v. *Commonwealth*, 362 Mass. 728, 736 (1973); Wilkins, Judicial Treatment of the Massachusetts Declaration of Rights in Relation to Cognate Provisions of the United States Constitution, 14 Suffolk U. L. Rev. 887, 923 (1980).[17]

---

[16] Section 32, inserted by St. 1971, c. 1071, § 1, read in part: "Except as authorized by this chapter, no person shall knowingly or intentionally manufacture, distribute, dispense, or possess with intent to manufacture, distribute or dispense a controlled substance . . . ." (There has been some revision of this text of § 32 by St. 1980, c. 436, § 4.)

[17] The double jeopardy claim is to be considered on appeal although there was no specific objection to the sentencing below. See *Common-*

The defendant points to decisions under a federal drug statute, 21 U.S.C. § 841 (a)(1) (1976), in text virtually identical with the first paragraph of our G. L. c. 94C, § 32 (partially quoted at n.16), where, says the defendant, it has been held that illicit distribution of a drug cannot be punished both as distribution and as possession with intent to distribute; there can be but one punishment as there is but one offense.  The cases turn out to be poor support for the defendant's position.  The holding mentioned applies to cases where the accused, being in possession of a particular packet or quantum of a drug, passes it to a buyer or other recipient, and this is sought to be charged as both distribution and possession with intent.  Quite understandably, courts have reasoned that Congress intended to punish a sale transaction with a particular packet of a drug as distribution, if the sale is completed, or as possession with intent, if interrupted before completion, but not as both; in such a case the possession with intent is incident to, and inherent in, the very distribution, and double charges would appear to be an artificial and unconstitutional cumulation of crimes and punishments.[18]  The cases on this point are numerous.[19]

wealth v. *Monsen*, 377 Mass. 245, 250-251 (1979); *Commonwealth* v. *Grasso*, 375 Mass. 138, 140 (1978); *Commonwealth* v. *White (No. 2)*, 365 Mass. 307, 311 (1974), cert. denied, 419 U.S. 1111 (1975).  (As to the *Monsen* and *Grasso* cases, see now *Commonwealth* v. *Jones*, 382 Mass. 387, 395-396 [1981], about double jeopardy in respect to concurrent sentences.)

[18] Compare *Commonwealth* v. *Kuklis*, 361 Mass. 302, 307-308 (1972), where, under a prior drug law, we disapproved multiple convictions for possession of a drug, possession with intent to sell, and being present where a drug was kept, the "same time, place," and "identical mass of a single drug" being involved in the three charges.  *Commonwealth* v. *Clemmons*, 370 Mass. 288, 293-294 (1976), cites *Kuklis* for the proposition that possession and possession with intent to distribute as to the same mass of drug at the same time and place constitute the "same offense" for double jeopardy purposes under the present statute, G. L. c. 94C, §§ 32, 34.

[19] See *United States* v. *Gomez*, 593 F.2d 210, 213-214 (3d Cir.) (en banc), cert. denied, 441 U.S. 948 (1979); *United States* v. *Hernandez*, 591 F.2d 1019, 1022 (5th Cir. 1979) (en banc); *United States* v. *Merlino*, 595 F.2d 1016, 1020 (5th Cir. 1979), cert. denied, 444 U.S. 1071 (1980); *United States* v. *Atkinson*, 512 F.2d 1235, 1240 (4th Cir. 1975), cert. denied, 424 U.S. 973 (1976); *United States* v. *Curry*, 512 F.2d 1299,

Commonwealth v. Diaz.

A different case, however, is presented where, as here, separate items are involved in the respective charges: the defendant had completed one heroin sale, and was holding a separate cache of the drug for future distributions. So in *United States* v. *Carter*, 576 F.2d 1061 (3d Cir. 1978), the court under 21 U.S.C. § 841(a) (1976) affirmed one punishment for distribution of a quantity of narcotics and a second for possession of another discrete quantity with intent to distribute it: "When an individual possesses an amount of heroin that could result in a future distribution, and when the same individual also distributes another quantity of heroin, he is punishable for both possession and for distribution." *Id.* at 1064. The result, according to the court, was consistent with congressional intent[20] and permitted by the double jeopardy clause. See also *United States* v. *Lewis*, 621 F.2d 1382, 1390 (5th Cir. 1980) (punishment for manufacture of certain items and separate punishment for possession of other items with intent to distribute); *United States* v. *Goodman*, 605 F.2d 870, 885 (5th Cir. 1979) (same); *United States* v. *Welebir*, 498 F.2d 346, 352 (4th Cir. 1976) (same). The words of neither the Federal statute nor our own describe an offense of maintaining a drug business, which might be proved by a number of acts of possession and sale; rather the statutes denounce particular acts stated disjunctively. This is indicative of the appropriate unit for pur-

---

1305-1306 (4th Cir.), cert. denied, 423 U.S. 832 (1975); *Goodson* v. *United States*, 564 F.2d 1071, 1073 (4th Cir. 1977); *United States* v. *Stevens*, 521 F.2d 334, 335-337 (6th Cir. 1975); *United States* v. *Henciar*, 568 F.2d 489, 492 (6th Cir. 1977), cert. denied sub nom. *Albert* v. *United States*, 435 U.S. 953 (1978); *United States* v. *Oropeza*, 564 F.2d 316, 323 (9th Cir. 1977), cert. denied, 434 U.S. 1080 (1978); *United States* v. *Olivas*, 558 F.2d 1366, 1368 (10th Cir.), cert. denied, 434 U.S. 866 (1977). Cf. *Prince* v. *United States*, 352 U.S. 322, 328 (1957) (regarding bank robbery and entering a bank with intent to commit a robbery).

[20] For the relevance of legislative intent to the challenge on double jeopardy grounds of multiple punishments, see *Whalen* v. *United States*, 445 U.S. 684, 689-690 (1980). See also *Commonwealth* v. *Jones*, 382 Mass. 387, 395 (1981); Westen & Drubel, Toward a General Theory of Double Jeopardy, 1978 Sup. Ct. Rev. 81, 111-122.

poses of punishment. Compare *Commonwealth* v. *Guerro*, 357 Mass. 741, 750-751 (1970), *Gallinaro* v. *Commonwealth*, 362 Mass. 728, 734 n.5 (1973), with *Sanabria* v. *United States*, 437 U.S. 54, 70-71 (1978), *Commonwealth* v. *Winter*, 9 Mass. App. Ct. 512, 525-528 (1980).[21] Agreeing with the *Carter* line of cases, and applying their approach to G. L. c. 94C, § 32, we hold that the defendant does not establish a double jeopardy violation.[22]

*Judgments affirmed.*

---

[21] Note also that the statutory wording has supported two convictions for two separate drug sales made on the same day, see *United States* v. *Noel*, 490 F.2d 89, 90 (6th Cir. 1974), and for possession with intent to distribute two different types of drugs, see *Commonwealth* v. *Scala*, 380 Mass. 500, 503-505 (1980); *United States* v. *Pope*, 561 F.2d 663, 669 (6th Cir. 1977). Compare *United States* v. *Horton*, 601 F.2d 319, 325 (7th Cir.), cert. denied, 444 U.S. 937 (1979), where sale of two packages of cocaine to one person at one time was considered one distribution. In *United States* v. *Woods*, 568 F.2d 509, 512-514 (6th Cir.), cert. denied, 435 U.S. 972 (1978), the defendant sold one of three packages of heroin and was arrested while in possession of the remaining two. He was convicted of three counts of possession with intent, and of one count of distribution, but the court affirmed only the distribution count. The discussion centered on the proposition that simultaneous possession of the three packets of heroin could support only one conviction for possession with intent; not considered was whether possession of the two packets after the sale of one could support convictions both for both possession with intent and distribution.

[22] We do not encounter here the question, more often considered in our decisions, whether one act may support more than one conviction. See *Commonwealth* v. *Jones*, 382 Mass. 387, 394 (1981); *Commonwealth* v. *Cerveny*, 373 Mass. 345, 355-356 (1977); *Salemme* v. *Commonwealth*, 370 Mass. 421, 423-424 (1976); *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871).