COMMONWEALTH *vs.* MARVIN MITCHELL. No. 91-P-837. September 2, 1993. *Constitutional Law*, Admissions and confessions, Waiver of constitutional rights. *Waiver. Evidence*, Admissions and confessions. *Practice, Criminal*, Voluntariness of statement.

With remarkable precision, the thirteen year old victim (her age at trial) described how she was raped and the physical characteristics of the rapist. While on her way to the school bus stop, the victim had been dragged from the street by a young man (early twenties) whom she had seen in her neighborhood almost every day for about two years. After dragging her behind a house on Crawford Street, that man forced acts of vaginal intercourse, fellatio, and cunnilingus. Among the physical characteristics of her assailant that the victim described were that he was clean shaven, but with a "shag" at the end of his chin, that his hair was "cut low," that he had a "copey" eye (the witness explained this was a word of Trinidadian origin meaning cross-eyed), and that there was a mole or

birthmark on his penis. She noticed that the assailant had been wearing a half red and half white shirt with black writing on it and "pinkish color jeans." The victim identified the defendant from mug shots and later made in-court identifications.

Marvin Mitchell, the man she identified as having raped her, was convicted by a jury of forced sexual intercourse with a minor and unnatural sexual intercourse with a minor.[1] On appeal, Mitchell attacks the receipt in evidence of an inculpatory statement made by him while he was in custody. There was an inadequate showing, he says, that he intelligently and voluntarily waived his right to remain silent. See *Commonwealth* v. *Day*, 387 Mass. 915, 920 (1983). Mitchell's being in police custody was a consequence of his having been picked up for public drinking. That he had been given Miranda warnings at his booking is not disputed. Officer Robin DiMarco participated in the booking process and said the only questions asked were routine ones incident to booking: name, address, name of parents, social security number, and the like. She and the other arresting officer, Trent Holland, engaged in conversation with the duty supervisor in the booking room, Lieutenant Cunningham, about whether the defendant resembled the description of a suspect in another crime and should be fingerprinted and photographed. There was question whether the defendant's clothes fit the description. Officer DiMarco commented that she worked as a plain clothes officer and "[t]his is how I usually dress, and we had mentioned to him [the duty officer] that usually the people wear the same clothes every day." At that juncture the defendant, who had overheard the conversation, interjected, "I didn't have these clothes on yesterday. . . . I had pink pants on."

This is one of those occasions when a statement made by a person in police custody is not the product of interrogation. See *Commonwealth* v. *Smallwood*, 379 Mass. 878, 885 (1980). Contrast *Commonwealth* v. *Brant*, 380 Mass. 876, 880 & 883, cert. denied, 449 U.S. 1004 (1980). Unlike the circumstances of *Brant*, in which the police, in expectation of inducing a statement by the defendant told him that his codefendant had made a statement, there is no evidence suggesting that the conversation among the police officers in the booking room in this case was an ingenious contrivance to make the defendant utter an incriminating statement. So far as appears from their testimony, the officers who took the defendant into custody for public drinking had not connected Mitchell with a rape, nor were they at the time aware of the significance of Mitchell's having worn pink pants. Contrast *Commonwealth* v. *Rubio*, 27 Mass. App. Ct. 506, 514 (1989). Rather, the case resembles *Commonwealth* v. *Williams*,

---

[1]A grand jury handed up four indictments of what may generically be called rape of a child. There were two counts of forced sexual intercourse with a child and two counts of forced unnatural sexual intercourse with a child. The jury acquitted on one count of forced sexual intercourse and one count of unnatural sexual intercourse.

388 Mass. 846, 854-856 (1983), in which the action of the police in bringing a possible confederate of the prime suspect into the same room for questioning was not regarded as a ruse to make the suspect waive his right to remain silent. In the instant case, the question is not whether the defendant made a knowing waiver of his right to remain silent. Conscious waiver is not involved. The question is whether the defendant spoke spontaneously and, therefore, voluntarily when he made the statement about the color of pants he had been wearing the day before. An unsolicited statement is admissible. *Commonwealth* v. *O'Brien*, 377 Mass. 772, 776 (1979).

After a voir dire examination of Officer DiMarco, the trial judge found "that the Commonwealth has satisfied its burden that the statement was voluntarily made, albeit, there was some testimony that the defendant was under the influence of alcohol, but not to the extent that it interfered with the voluntariness of the statement he made." The judge based his finding about the defendant's general competence and awareness, even though a little drunk, on the defendant's ability "to follow the conversation between Officer DiMarco and the lieutenant. I understand its import to make a statement that he felt it was in his best interest and exculpatory." On review an appellate court does not disturb a determination of a trial judge about the voluntariness of a defendant's statement while in custody if the judge's subsidiary findings support the determination and if those findings are warranted by the evidence, the judge's resolution of conflicting testimony, or the credit given by the judge to particular testimony. *Commonwealth* v. *Tavares*, 385 Mass. 140, 144-145, cert. denied, 457 U.S. 1137 (1982). We think the judge's findings in this case justified on the evidence.

The defense makes much of the trial judge having referred to a "threshold inquiry" of voluntariness, arguing that this implied the judge failed to apply the proper "beyond a reasonable doubt" standard. In context, the phrase was used in the sense of something the judge had to do first. As to his ultimate decision about whether the defendant's pink pants admission was spontaneous, the judge was persuaded with unmistakable clarity "beyond a reasonable doubt." He did not have to mouth that phrase. *Commonwealth* v. *Brown*, 392 Mass. 632, 636-637 (1984).

There was sufficient basis in the record warranting the judge's decision that the defense had fair warning from the government about the "pink pants" statement and was not significantly disadvantaged by the testimony ultimately having come from Officer DiMarco instead of Officer Holland.

*Judgments affirmed.*

*Adam J. Nussenbaum* for the defendant.

*Paul B. Linn*, Assistant District Attorney, for the Commonwealth.