COMMONWEALTH *vs.* JESUS ADAMES.

No. 95-P-16.

Middlesex. October 10, 1995. - August 5, 1996.

Present: ARMSTRONG, PORADA, & LENK, JJ.

*Controlled Substances. Joint Enterprise. Evidence,* Joint enterprise, Infer-
ence.

Evidence at the trial of an indictment for trafficking in cocaine was suf-
ficient to establish the defendant's participation in a joint venture to sell
cocaine. [15-16]
At a criminal trial, the issue of the custody of a certain piece of evidence
went to its weight rather than its admissibility. [16]
At a criminal trial, testimony about, and a demonstration of, florescence of
certain materials under ultraviolet light were properly admitted without
a specialized foundation as expert opinion testimony. [16-17]

INDICTMENT found and returned in the Superior Court
Department on March 30, 1993.

The case was tried before *Regina L. Quinlan,* J.

*Richard N. Foley* for the defendant.

*David E. Edmonds,* Assistant District Attorney, for the
Commonwealth.

ARMSTRONG, J. Lowell police, having first obtained search
warrants for two apartments in a house, one (first-floor)
thought to be the locus of retail sales of crack cocaine, the
other (third-floor) to be the stash apartment, preceded the
search[1] by a controlled buy, effected in this manner. Inspector
DeMoura who made the purchase, was given a ten dollar bill
which had been dusted with a fluorescent powder that glowed
green when put under blue ultraviolet light, and on which
had been written "Police" in ultraviolet crayon. The powder
and the inscription were invisible in normal light. Inspector
DeMoura then went to the door of the first-floor apartment,

---

[1]The validity of the search is not challenged in this appeal.

which was heavily barricaded, and asked for "a piece," which is the term for a "bag" with a small rock of crack cocaine. He passed the ten dollar bill through a hole in the bottom of the door. The "piece" came back through the hole. Inspector DeMoura returned to waiting officers, and a "special operations unit," armed with battering devices to break down barricaded doors, entered the first- and third-floor apartments and secured them. Then the narcotics officers entered.

Four Hispanic men were found in the first-floor apartment. The hands of two of these men, one of whom was the defendant, glowed distinctly green under the blue ultraviolet light, indicating that they had handled the marked bill. The defendant had $304 on his person. The other had "a large sum of money" including the marked bill. In the third-floor apartment were found 239 "pieces" of crack cocaine, packaged identically to the "piece" sold to the undercover officers, and of identical purity. A photograph of one of the four first-floor occupants was found in the third-floor apartment. The two apartments were connected by an exterior staircase, and prior to the search the officers had observed three instances of a Hispanic male leaving the first-floor apartment, ascending by the exterior stairs to the third-floor apartment, then returning moments later to the first-floor apartment.

Essentially the same factors govern the defendant's two principal contentions: that there was no evidence of his participation in a joint venture to sell crack cocaine, and that the judge erred in admitting in evidence the 239 bags from the third-floor apartment. But the connection between the two apartments was amply demonstrated, both before the raid, by the observed traffic between the first- and third-floor apartments, and after, by the photograph and the crack cocaine in the upper apartment identical in packaging and purity to the "piece" sold from the first-floor apartment. See *Commonwealth* v. *Pratt,* 407 Mass. 647, 652 (1990); *Commonwealth* v. *James,* 30 Mass. App. Ct. 490, 495-497 (1991); *Commonwealth* v. *Rivera,* 40 Mass. App. Ct. 308, 312 (1996). Moreover, the evidence concerning the first-floor apartment: that it was heavily barricaded, that it was occupied only by four males, and that it was the locus for at least one sale of crack cocaine, through a hole in the door, no questions asked, together suggested that it was a base for retail sales of crack cocaine (compare *Commonwealth* v. *Arias,* 29 Mass. App. Ct.

613, 619 [1990]) and that, if the stock from which sales were made were not *in* the apartment, it would in all likelihood be found nearby. The commonsense inference to be drawn from the evidence about the two apartments combined, was that men in the first-floor apartment were engaged in a joint venture to sell the crack cocaine in the third-floor apartment; and, if further evidence were needed to connect the defendant particularly to the joint venture, his participation in the controlled buy, evidenced by the fluorescent powder on his hands immediately after the sale, supplied it. Consistent with the inference was the large amount of cash found on him and on the other florescent-handed occupant of the apartment.

The other issues argued are similarly without merit. The questions raised by the defendant about the custody of the bag of crack cocaine purchased in the controlled buy went to the weight of that evidence rather than to its admissibility. See *Commonwealth* v. *White*, 353 Mass. 409, 419-420 (1967), cert. denied, 391 U.S. 968 (1968); *Commonwealth* v. *Viriyahiranpaiboon*, 412 Mass. 224, 230 (1992); *Commonwealth* v. *Diaz*, 15 Mass. App. Ct. 469, 473 (1983). There was no need to precede Sergeant Taylor's testimony about the fluorescent powder by expert opinion testimony to lay a foundation under the principles of *Frye* v. *United States*, 293 F. 1013 (D.C. Cir. 1923). The jury did not need to be educated on what makes such powder fluoresce, nor did the judge need to pass on the acceptance in the scientific community of the principles underlying "the ultraviolet tracing system."[2] The sergeant's testimony was simply to the effect that the bill used in the purchase had been dusted with a particular powder, and he demonstrated to the jury how such powder glows under blue ultraviolet light. This was not expert opinion testimony, and it needed no specialized foundation. The jury, unaided by

---

[2]The defendant's reliance on Giannelli & Imwinkelreid, Scientific and Expert Evidence at 473-474 and 478 (2d. ed. 1981), is misplaced, because the discussion there concerning ultraviolet spectrophotometry, a technique used to identify drugs, has nothing to do with the use of fluorescent powder for tracing purposes. The latter is commonly admitted in evidence without expert opinion. See *Dibble* v. *State*, 347 So. 2d 1096, 1097 (Fla. Dist. Ct. App. 1977); *Rusher* v. *State*, 270 N.E.2d 748, 749 (Ind. 1971); *State* v. *Washington*, 533 So. 2d 392, 393 (La. Ct. App. 1988); *Maumee* v. *Geiger*, 344 N.E.2d 133, 134 (Ohio 1976); *Jackson* v. *State*, 265 S.W.2d 829, 830 (Tex. Crim. App. 1954). See also Giannelli & Imwinkelreid, *supra* at 1119-1120, and cases cited therein.

such testimony, could draw their own inferences from the fact that, in the immediate aftermath of the sale, not only did the bill glow, but also the defendant's hands.

*Judgment affirmed.*