## COMMONWEALTH vs. ANGEL ORTIZ.

Plymouth. January 7, 2000. - March 27, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Controlled Substances. Practice, Criminal,* Double jeopardy, Required finding, Motion to suppress, Presumptions and burden of proof, Voluntariness of statement. *Evidence,* Wiretap. *Eavesdropping.*

In circumstances in which a defendant was found to possess multiple separate amounts of a controlled substance at one time, a prosecutor had discretion to pursue one prosecution by aggregating separate amounts to constitute a more serious offense or to pursue separate prosecutions. [137-139]

A criminal defendant was properly prosecuted on a single indictment for trafficking in cocaine based on the aggregation of separate amounts of cocaine he possessed in separate locations, and the evidence was sufficient to warrant the finder of fact to conclude that the defendant was guilty beyond a reasonable doubt. [139-140]

Error, if any, in a judge's awkward articulation of the standard governing the voluntariness of the defendant's statements to police, expressed in his findings and rulings denying the defendant's motion to suppress those statements, was corrected by the ruling under the humane practice rule of the judge who heard the case jury-waived that the defendant's statements were voluntarily, freely, and knowingly given and that the statements were admissible. [140-142]

Evidence at a criminal trial warranted the judge's conclusions that a police officer's testimony was not predominantly based on telephone conversations recorded in violation of G. L. c. 272, § 99, and that the testimony was properly admissible. [142]

INDICTMENTS found and returned in the Superior Court Department on May 28, 1996.

A pretrial motion to suppress evidence was heard by *Richard J. Chin,* J., and the cases were heard by *John A. Tierney,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Catherine K. Byrne,* Committee for Public Counsel Services, for the defendant.

*Gail M. McKenna,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. After a jury-waived trial, a judge in the Superior Court convicted the defendant on two separate indictments, the first charging him with trafficking in heroin in an amount of twenty-eight grams or more, but less than one hundred grams, G. L. c. 94C, § 32E (*c*) (2), and the second charging him with trafficking in heroin in an amount of 200 grams or more, G. L. c. 94C, § 32E (*c*) (4).[1] The defendant argues that the Commonwealth's evidence was insufficient to warrant the latter conviction because the prosecution had aggregated the amounts found in two "stashes" of heroin at different locations to arrive at 200 grams or more. Thus, the defendant maintains that his motion for a required finding of not guilty under Mass. R. Crim. P. 25 (a), 378 Mass. 896 (1979), should have been allowed on the charge.[2] The defendant also argues that his pretrial motion to suppress statements to the police was improperly denied because the judge who decided the motion applied the wrong legal standard in deciding that the statements had been made voluntarily. Finally, the defendant challenges the trial testimony of a Federal agent, where his testimony, the defendant contends, was improperly based upon tape recordings that had been suppressed because they were made in violation of G. L. c. 272, § 99, the wiretap statute. The latter two arguments, in the defendant's view, at the very least, require a new trial on both convictions. We transferred the case here on our own motion. We reject the defendant's arguments and affirm both convictions of trafficking in heroin.

Based on the evidence most favorable to the Commonwealth, the judge could have found the following facts. In April, 1996, Special Agent Paul L.D. Russell, Jr., of the Federal Drug Enforcement Administration (DEA), working undercover, had obtained the defendant's pager number from a confidential informant. Agent Russell first came in contact with the defendant on April 24, 1996, when the defendant made a telephone call in response to Russell's page. In this telephone conversation, Agent Russell arranged to purchase heroin from the defendant. In keeping with their arrangements, Agent Rus-

---

[1]The defendant was also convicted of unlawful possession of firearms. Those two convictions were placed on file with his consent and are not before us on appeal. *Commonwealth* v. *Johnson*, 422 Mass. 420, 421 n.1 (1996).

[2]The motion for a required finding was allowed as to an indictment charging trafficking in heroin in an amount of fourteen grams but less than twenty-eight grams.

sell, later that day, purchased 25.7 grams of heroin from a man who identified himself as the defendant's brother in exchange for $4,500 in cash.

On May 2, 1996, the defendant responded to a page from Agent Russell and agreed to another sale of heroin. The defendant also had his brother and Rosa Guzman speak with Agent Russell to set up the sale. That evening, Agent Russell went to the chosen location. The defendant arrived driving a white automobile. The defendant's passengers, Guzman and two children, got out of the automobile and went into a restaurant. Agent Russell, at the defendant's invitation, joined the defendant in the automobile, where he paid the defendant for 48.8 grams of heroin.

On May 8, 1996, in response to Agent Russell's page, the defendant and Guzman each spoke with Russell concerning his desire to purchase 200 grams of heroin. The defendant agreed to sell 150 grams of heroin and nine "bricks" of cut heroin to Russell for $18,600. The parties agreed to meet in front of a Bradlees store at the Westgate Mall in Brockton to complete the transaction.

On that day, State police Sergeant Stephen O'Reilly and Trooper Paul Hartley, who had been assigned to the case, were conducting surveillance at the Westgate Mall[3] and saw the defendant and one Mario Delgado arrive in an automobile. Delgado and the defendant met Agent Russell in front of Bradlees. They returned to, and got into, the automobile to complete the sale. Agent Russell got out of the vehicle and signaled to the State police officers, who arrested the defendant and Delgado. On searching Delgado, Sergeant O'Reilly found a large, brown paper bag containing heroin in a "clear Zip-lock bag," weighing 110.8 grams, and in 450 glassine bags, with a total weight of 24.3 grams.

The defendant and Delgado were taken to the Brockton police station, where the defendant received his Miranda rights and stated that he understood them. Sergeant O'Reilly asked the defendant where the rest of the "stash" was located. The defendant told O'Reilly that about one hundred grams of heroin was hidden in the basement at 70 Tyler Street in Brockton, "underneath some fake stairs." The defendant also told O'Reilly

[3]Sergeant O'Reilly had previously conducted surveillance of the defendant and Guzman at 70 Tyler Street, and at other locations, including the location where Agent Russell purchased heroin from the defendant on May 2, 1996.

that the key to gain access to the basement was located in a file cabinet in the house, where there was also about $6,500 in cash.

Sergeant O'Reilly promptly went to 70 Tyler Street. Other police officers were at the house in the process of searching the first floor apartment pursuant to a warrant. The police found, underneath the stairway in the basement, a package containing two plastic bags of heroin, with a total weight of 98.9 grams. They also found packaging material, tape, empty bags, a scale, and sifters, among other items. Inside the house, the police seized $6,743 in cash, including twelve bills with serial numbers matching those that had been marked on the money used by Agent Russell in his purchase from the defendant on May 2, 1996. The police also found a black notebook that contained notations relating to drug transactions.

1. The defendant claims that he was entitled to a required finding of not guilty on the indictment charging him with trafficking in 200 or more grams of heroin on May 8, 1996, because the Commonwealth's evidence was insufficient as matter of law. The defendant does not contest on appeal that he constructively possessed the total amount of heroin that underlies the charge. Rather, he claims that the heroin he possessed at each location (at the Westgate Mall and at 70 Tyler Street) constituted separate quantities that were intended for different purposes, and the Commonwealth was not, therefore, permitted to combine the two quantities in one possession charge. The defendant bases his argument that aggregation was impermissible on what was expressed in *Commonwealth* v. *Diaz*, 383 Mass. 73, 82-85 (1981). We stated that our drug statutes do not describe the "offense of maintaining a drug business, which might be proved by a number of acts of possession and sale; rather the statutes denounce particular acts stated disjunctively." *Id.* at 84. The defendant reasons that, if according to the *Diaz* case, the crime of possession with intent to distribute heroin involves one specific act or transaction, then, in the absence of evidence that two amounts of heroin are part of the same act or transaction, the Commonwealth may not aggregate the two amounts in order to convict him of a more serious offense. The defendant concludes that such evidence was lacking here and the Commonwealth failed to satisfy its burden of proving that the two

amounts seized from him on May 8, 1996, were part of the same transaction.[4]

We recently stated in *Commonwealth* v. *Rabb, ante* 123, 130 (2000), that separate prosecutions for possession of a controlled substance under G. L. c. 94C, § 32E, do not offend double jeopardy principles, as long as the amount of the specific controlled substance supporting each conviction constitutes a "separate item" that is sufficiently differentiated by time, location, or intended purpose. Nothing that was stated in *Rabb, supra,* or in *Diaz, supra,* however, precludes a prosecutor from combining two quantities of a specified controlled substance possessed by a defendant at different locations in order to prosecute him on a more serious offense under G. L. c. 94C, § 32E. General Laws c. 94C, § 32E (*c*), has no language prohibiting a prosecutor from aggregating separate supplies of heroin possessed by a defendant at one time to constitute a single offense. The procedure of aggregating separate quantities of a specific controlled substance to bring one criminal charge is frequently used, see, e.g., *Commonwealth* v. *Cuffie,* 414 Mass. 632, 638-639 (1993); *Commonwealth* v. *Adames,* 41 Mass. App. Ct. 14, 15-16 (1996); *Commonwealth* v. *Rivera,* 40 Mass. App. Ct. 308, 312-313 (1996), and is considered a permissible tool within prosecutors' broad discretion to initiate and conduct criminal prosecutions. See *Cedeno* v. *Commonwealth,* 404 Mass. 190, 196-197 (1989) (prosecutorial discretion to determine penalty to which accused exposed based on choice of charges does not violate due process). Absent statutory language to the contrary, or jurisdictional limitations imposed by the Legislature as to Massachusetts courts (both in terms of subject matter jurisdiction and geographical jurisdiction), a prosecutor has the discretion to pursue one prosecution, or more, in circumstances, such as here, where a defendant is found to possess multiple

---

[4]The defendant also suggests that his double jeopardy rights were implicated when the Commonwealth prosecuted him with one violation of the statute rather than two separate violations. Double jeopardy issues arise in situations where a defendant has multiple convictions of violating related statutory provisions based on the same conduct, see *Blockburger* v. *United States,* 284 U.S. 299, 304 (1932), or where a defendant is subjected to successive prosecutions for the same offense. See *Rashad* v. *Burt,* 108 F.3d 677, 679-680 (6th Cir. 1997), cert. denied, 522 U.S. 1075 (1998). The circumstances of this case do not raise issues of double jeopardy. Cf. *Commonwealth* v. *Rabb, ante* 123 (2000).

separate amounts of a controlled substance at one time.[5] See *Commonwealth* v. *Rabb, supra* at 129-130 n.5. See also *Commonwealth* v. *Murray,* 401 Mass. 771, 774 (1988); *Commonwealth* v. *England,* 350 Mass. 83, 87 (1966); *Commonwealth* v. *Brown,* 12 Mass. App. Ct. 988, 988-989 (1981).

The defendant's contention that the Commonwealth is required to prove that the two quantities of heroin came from the same supply, in order to link them for purposes of one prosecution, is incorrect. Whether multiple quantities of a certain controlled substance come from the same supply is, generally, irrelevant to the question whether a prosecutor may combine the amounts under one indictment.[6] A defendant may point to the lack of a connection to a larger supply, however, to assert, as a ground for an insufficient evidence claim, that part of the total quantity was intended for a different use, and not for sale. See *Commonwealth* v. *Ellis,* 356 Mass. 574, 578-579 (1970); *Commonwealth* v. *Rivera,* 44 Mass. App. Ct. 452, 454 (1998).

We turn now to what the judge would have been warranted in finding on the evidence here. The defendant had agreed to sell Agent Russell 150 grams of heroin, but arrived at the Westgate Mall with 135.1 grams, less than the promised amount. In response to Sergeant O'Reilly's inquiry, the defendant stated that the rest of his heroin, comprising about one hundred grams, could be found at 70 Tyler Street, where the police located 98.9 grams of heroin exactly where the defendant had indicated. The circumstances surrounding how this heroin was found, together with the seizure of drug paraphernalia found with it, permitted an inference that the defendant had constructive possession of this heroin, and that he had intended to distribute this heroin as

---

[5]Similarly, the prosecutor, had he chosen, could have sought two indictments against the defendant based on his contacts with Agent Russell. See *Commonwealth* v. *Rabb, supra* at 129-130.

[6]Evidence that a quantity of a controlled substance found in a defendant's possession comes from a certain supply will continue to be relevant to prove a defendant's constructive possession of the controlled substance in the supply. See, e.g., *Commonwealth* v. *Pratt,* 407 Mass. 647, 652 (1990); *Commonwealth* v. *James,* 30 Mass. App. Ct. 490, 494, 496 (1991). Evidence that both quantities of heroin came from the same supply was not necessary, in this case, to prove the defendant's constructive possession of the heroin in the house located at 70 Tyler Street, because that heroin was linked to the defendant by his own words, when he told the police where they could find the rest of the heroin. See *Commonwealth* v. *Padilla,* 42 Mass. App. Ct. 67, 74 (1997). We note again that the defendant does not argue on appeal that he lacked constructive possession of the heroin in the house.

well. See *Commonwealth* v. *Davis*, 376 Mass. 777, 788 (1978). We conclude that the defendant was properly prosecuted on this single trafficking indictment, and that the judge could conclude beyond a reasonable doubt that the defendant possessed over 200 grams of heroin with intent to distribute it. The defendant's motion for a required finding of not guilty was properly denied.

2. The defendant filed a motion to suppress incriminating statements made by him after his arrest on May 8, 1996. The statements primarily concerned the defendant's telling Sergeant O'Reilly that the rest of the heroin could be found in the basement at 70 Tyler Street and where the key to the padlock on the basement door could be located. A judge in the Superior Court (not the trial judge) conducted an evidentiary hearing on the motion to suppress and, in a memorandum of decision, denied the motion, ruling that the defendant's statements were made after he knowingly, intelligently, and voluntarily waived his Miranda rights, and that the statements were voluntary in all other aspects. In reaching his decision, the judge set forth what he perceived to be the applicable legal standards. As to the Miranda issue, the judge correctly stated that "the Commonwealth must prove a knowing and intelligent waiver of Miranda rights beyond a reasonable doubt. *Commonwealth* v. *Day*, 387 Mass. 915, 921 (1983)." As to the issue of voluntariness, the judge stated that a defendant's incriminating statements are "prima facie voluntary," and "the burden is upon the defendant to establish legal basis for [their] exclusion." The defendant focuses on the latter standard. He argues that this expresses an incorrect legal standard, and, as a consequence, the motion to suppress was wrongly decided by the judge, his statements should not have been admitted at trial, and a new trial is required. We disagree.

It is, of course, true that, before incriminating statements of a defendant can be placed before a fact finder, the Commonwealth must satisfy a judge "that the statements are voluntary beyond a reasonable doubt." *Commonwealth* v. *Tavares*, 385 Mass. 140, 152, cert. denied, 457 U.S. 1137 (1982). The judge's finding on the question must appear "from the record with unmistakable clarity." *Sims* v. *Georgia*, 385 U.S. 538, 544 (1967). *Commonwealth* v. *Mello*, 420 Mass. 375, 382-383 (1995). "We have previously held, however, that, although we encourage judges to use the words 'beyond a reasonable doubt' in their findings, it is not error not to do so." *Commonwealth* v. *Ward*, 426 Mass. 290,

296 (1997). See *Commonwealth* v. *Brown*, 392 Mass. 632, 637-638 (1984). See also *Commonwealth* v. *Fuentes*, 45 Mass. App. Ct. 934, 936 (1998); *Commonwealth* v. *Mitchell*, 35 Mass. App. Ct. 909, 911 (1993).

The motion judge's articulation of the standard governing the voluntariness issue is awkward. In making the statement, the judge may have been referring to a defendant's initial burden of production with respect to a motion to suppress statements. On the Miranda issue, the judge expressed the correct legal standard. The judge, as he was required to do, expressly stated in the decision on the motion his ruling that the defendant's statements "were made voluntarily." It is clear from the judge's findings of fact that he accepted the testimony of the police officers, particularly Sergeant O'Reilly. As to the defendant's contentions, the judge said three times in his decision that there was "no evidence" to support the defendant's various assertions that his statements "were not made voluntarily." (The defendant did not testify at the hearing on the motion to suppress.) The motion judge, therefore, may not have committed error.

We need not dwell on the question, however, because the trial judge who heard and decided the case without a jury independently considered the voluntariness of the defendant's statements. This judge did so apparently in an exercise of caution because he, not a jury, was the ultimate fact finder, and he wanted the record to be clear that he found no legal impediment to his consideration of the defendant's statements on their merits. As to the statements, the trial judge ruled as follows: "I further find under the humane practice rule that the statements made [by the defendant] to the police were voluntarily, freely and knowingly given, and I am allowing them into evidence." The defendant did not testify at the trial. We assume that the trial judge "correctly instructed himself" on the applicable burden of proof. *Cummings* v. *National Shawmut Bank*, 284 Mass. 563, 568 (1933). *Commonwealth* v. *Gurney*, 13 Mass. App. Ct. 391, 394-395 n.5 (1982). This is especially so because the judge referred to the humane practice rule, which is a special doctrine of Massachusetts law with which trial judges are familiar. Any deficiency in the motion judge's decision was corrected by the ruling of the trial judge, and the defendant's state-

ments were properly considered by him on the question of the defendant's guilt.[7]

3. Telephone conversations between Agent Russell and the defendant were recorded in compliance with Federal, but not State, law. The motion judge ordered the tape recordings of the conversations suppressed because they were obtained in violation of the requirements of G. L. c. 272, § 99, as interpreted in *Commonwealth v. Blood*, 400 Mass. 61 (1987). Agent Russell testified at the trial about his dealings with the defendant. The defendant argues that the trial judge should not have admitted Agent Russell's testimony because it was solely derived from the illegal tape recordings. We conclude that the judge properly admitted Russell's testimony.

In *Commonwealth* v. *Eason*, 427 Mass. 595, 601 (1998), we left open the question whether a judge could admit the testimony of a police officer who might concede that, in presenting his testimony, he has relied on illegally obtained tape recordings. We need not concern ourselves with answering that question here. Agent Russell was subjected to extensive cross-examination concerning the source of his testimony. The judge was warranted in concluding, as he implicitly did in denying a motion to strike Agent Russell's testimony, that the testimony was not predominately based on the illegal tape recordings, but rather, was based on Russell's investigation and recollection of the criminal events.

*Judgments affirmed.*

---

[7]Trial judges may reconsider pretrial rulings made by other judges. See *Commonwealth* v. *Parker*, 412 Mass. 353, 355-357 (1992); *Catalano* v. *First Essex Sav. Bank*, 37 Mass. App. Ct. 377, 384 (1994); *Commonwealth* v. *Plantier*, 22 Mass. App. Ct. 314, 317-318 (1986). See also Mass. R. Crim. P. 13 (a) (5), 378 Mass. 871 (1979). We see no reason why this rule should not apply to motions to suppress. We recommend that, when judges reconsider pretrial rulings, they so inform counsel and allow counsel an opportunity to be heard.