COMMONWEALTH vs. GUILLERMO MONTANEZ.

Middlesex. March 3, 2003. - May 22, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Evidence,* Fresh complaint, Hearsay, State of mind, Consciousness of guilt. *Practice, Criminal,* Argument by prosecutor, Assistance of counsel. *Constitutional Law,* Assistance of counsel.

Discussion of the governing principles of the fresh complaint doctrine. [443-445]

This court rejected the contention of the defendant in a sexual abuse case that *Commonwealth* v. *Peters,* 429 Mass. 22 (1999), required that any fresh complaint witness mentioned by the complainant at trial must testify. [445-446]

At the trial of indictments for sexual abuse of a child, the judge did not abuse his discretion in admitting certain testimony regarding the victim's conversation with a friend on the subject of the victim's delay in reporting the abuse where, although the victim should not have testified to the substance of her conversation with her friend under the rubric of fresh complaint, such testimony was admissible as evidence of the victim's state of mind. [446-448]

At the trial of indictments for sexual abuse of a child, testimony of the victim, setting forth the action taken by a guidance counsellor after learning of assaults on the victim, was improper, where the evidence was hearsay and served only as self-corroboration, indicating that the victim was sufficiently credible to cause someone in authority to take certain steps; moreover, the victim's affirmative answer that she told roughly the same story during a videotaped interview prepared at the district attorney's office was simply another type of prohibited self-corroboration. [448]

At the trial of indictments for sexual abuse of a child, testimony of the victim's mother that she was shocked by the victim's revelations lacked relevance and was inadmissible hearsay; further, the mother should not have been asked whether what she had told the police was "basically . . . what [she] told . . . in court." [448-449]

At the trial of indictments for sexual abuse of a child, certain unobjected-to testimony of a police officer as to the substance of her conversation with the victim and others, while hearsay, did not create a substantial risk of a miscarriage of justice. [449]

This court, taking into consideration the greater likelihood that the judge at a jury-waived trial of indictments for sexual abuse of a child would not have been influenced by extraneous factors, found no cause for concern regarding the effect of certain self-corroborating testimony of the victim. [449-450]

At the jury-waived trial of indictments for sexual abuse of a child, the judge did not err in admitting unobjected-to testimony describing the victim's emotional state where, although not admissible as fresh complaint, the testimony was admissible as evidence of the victim's state of mind; further, error in the admission of testimony regarding a friend's advice to the victim to notify her guidance counselor and her request for advice from her cousin, although inadmissible hearsay, did not sway the verdicts against the defendant, given the lack of significance of the evidence. [450]

At the jury-waived trial of indictments for sexual abuse of a child, the prosecutor's unobjected-to closing remarks were not improper where, in one segment of the prosecutor's closing, it could not be said that there was not a proper basis for the prosecutor to suggest consciousness of guilt as part of his argument and, in a second segment, although the prosecutor misstated the evidence, the fact finder was to rely on his memory of the evidence, not that of counsel. [450-452]

At the jury-waived trial of indictments for sexual abuse of a child, the defendant's counsel did not render ineffective assistance for failing to object to the multiple examples of inadmissible hearsay, where counsel's lapses did not deprive the defendant of an otherwise available, substantial ground of defense and, as the trial was jury-waived, exclusion of the testimony likely would have had no significant effect on the judge; moreover, there was no merit to the defendant's contentions that there was ineffective assistance for counsel's failing to object to the prosecutor's closing argument with respect to consciousness of guilt, and for not objecting to "material misstatements" of the evidence. [452-453]

SOSMAN, J., with whom CORDY, J., joined, concurred, but stated that it was time for this court to revisit the fresh complaint doctrine and modernize its approach to the introduction of such testimony. [453-459]

INDICTMENTS found and returned in the Superior Court Department on October 29, 1998.

The cases were heard by *Peter W. Agnes, Jr.*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert F. Shaw, Jr.*, for the defendant.

*Loretta M. Lillios*, Assistant District Attorney, for the Commonwealth.

COWIN, J. After a jury-waived trial in the Superior Court, the defendant was found guilty on ten indictments charging sexual assault.[1] The charges arose after the victim reported that she had been sexually assaulted by her mother's live-in boy friend from

[1]The ten indictments consist of two charging statutory rape, G. L. c. 265, § 23; one charging assault on a child under sixteen with intent to rape, G. L. c. 265, § 24B; and seven charging indecent assault and battery (four on a

the time the victim was nine and one-half years old until she was fifteen years old. During this period the defendant was living with the victim, her siblings, and her mother at their various residences in Lowell.[2]

The defendant appealed from his convictions to the Appeals Court, and we transferred the case to this court on our own motion. Represented by new counsel, the defendant claims error from the admission of unobjected-to fresh complaint testimony; prosecutorial misconduct in the closing argument; and ineffective assistance of trial counsel. We conclude that much of the evidence admitted as fresh complaint testimony did not qualify as such but that there was no substantial risk of a miscarriage of justice in this jury-waived trial. We further determine that the prosecutor's closing argument was proper and that counsel did not render ineffective assistance. Accordingly, we affirm the convictions.

1. *Fresh complaint.* The defendant asserts that the testimony of the victim and other witnesses exceeded the scope of fresh complaint testimony and was otherwise inadmissible hearsay; and that this inadmissible testimony served to buttress the victim's credibility. The defendant alleges that, in a case that was essentially a contest of credibility, he was prejudiced by the admission of this testimony. Because there was no objection to this testimony,[3] we review to consider whether there is a substantial risk of a miscarriage of justice. *Commonwealth* v. *Whelton*, 428 Mass. 24, 25-26 (1998).

Examination of the trial testimony reveals the following. The victim testified to the details of the sexual abuse by the defendant; the general substance of a conversation with a friend concerning the abuse[4]; the fact that she spoke to a female guidance counsellor about the incident and the steps the guidance counsellor took as a result of that conversation; a conversation

---

child under the age of fourteen years, G. L. c. 265, § 13B, and three on a person who has attained fourteen years, G. L. c. 265, § 13H).

[2]The victim referred to the defendant as her "stepfather." No evidence of such a legal relationship was presented, but the victim testified that the defendant contributed significantly to the family's financial support and that he treated the children "just like we were his kids."

[3]Objections were lodged at two points, see *infra*.

[4]The victim's testimony in this regard was as follows:

in which she told her mother a "little bit" about the situation, an interview with the police and then a representative of the district attorney's office; and, finally, a videotape interview by the district attorney's office in which she told "roughly" the same story "that [she] told [in court] today." Thereafter, her friend, the sole person denominated as a fresh complaint witness, recounted a conversation with the victim that did not contain the details of the sexual abuse that had occurred but essentially explained the victim's prolonged delay in reporting the situation: that the family was financially dependent on the defendant and that she did not want her younger brother (the child of her mother and the defendant) to be affected. The friend also stated, over objection, that the victim looked "worried" and "scared" during this conversation, and that she advised her to speak to a female guidance counsellor and that the victim did so and was "nervous" at that time. Finally, the friend testified, again over objection, that she related to her cousin what had happened and received advice from that source. Both the victim's mother and a Lowell police officer, Detective Julie Mc-

---

Q.: "And at that point did you have a conversation with [your friend]?"

A.: "Yes."

Q.: "And did you tell her initially that it was you that you were talking about or did you say something different?"

A.: "No, I told her that, what would she do if a friend had this particular problem and I described it to her."

Q.: "And then at some point did you change and tell her that it was in fact you that you were talking about?"

A.: "Yes."

Q.: "As a result of that conversation that you had with [your friend], did you make some kind of a plan or an agreement with her?"

A.: "Yes."

Q.: "And what was that plan?"

A.: "That we wouldn't say anything until Monday, that we would tell, don't tell anybody until Monday morning."

Dowell, testified, but not as fresh complaint witnesses. (Their testimony will be discussed in more detail below.) There was also a stipulation regarding inconclusive DNA evidence.

The defendant denied that these assaults had taken place. He claimed he loved the victim as one of his own children, and that the story of abuse was fabricated as retribution for his allegedly harsh discipline. He stated that the mother was motivated by revenge because he had not been a good provider. He also attacked the victim's credibility by cross-examination suggesting that if the abuse had occurred she would have disclosed it earlier; her reasons for not doing so were not believable and it was unlikely that no other family member saw or heard the abuse if it had occurred mainly in the home during a period of six years.

In *Commonwealth* v. *Peters*, 429 Mass. 22, 27 (1999), we explained that our fresh complaint doctrine "permits an out-of-court complaint seasonably made by the complainant in a sexual assault case to be admitted as part of the prosecution's case-in-chief. Evidence of the fact of the complaint is admissible only to corroborate the complainant's testimony [and not] . . . to establish the truth of the complaint itself . . . a fresh complaint witness may testify both to the fact of the complaint and the details of the complaint as expressed by the complainant" (footnote and citations omitted). Further, we stated that "while a complainant may testify about the fact that she made a complaint to another about a sexual assault, the person complained to, the fresh complaint witness, must be produced to testify about what the complainant said and to be available for cross-examination." *Id.* at 28. Finally, pursuant to our rule, the admissibility of the fact of the complaint is not dependent on an attack on the credibility of the complainant. *Id.* at 27- 28. The court expressed its reservations concerning the fresh complaint doctrine, nonetheless continued to believe that fresh complaint evidence should be admissible.[5] *Id.* at 30.

Against this backdrop of the governing principles, we

[5]It may well be time to address further the validity of these beliefs, see *post* at 453, and the fact that we remain one of the only jurisdictions where a fresh complaint witness may testify both to the fact of the complaint and its details

consider the defendant's specific claims. First, the defendant contends that *Peters* requires that any fresh complaint witness mentioned by the complainant at trial must testify. He discerns this mandate from the language that the fresh complaint witness "must be produced to testify about what the complainant said." *Id.* at 28. The *Peters* court intended no such requirement. That case concerned a very different situation, one in which the complainant herself was permitted to testify to numerous details regarding her conversations with fresh complaint witnesses. Our decision was designed to end this practice. It was not intended to encompass the situation here in which the victim mentions that she complained to various persons without relating the specific contents of any of these fresh complaints, but those persons do not testify. We have never held that such reference requires the production of those witnesses, and we do not adopt such a rule.

Having rejected the defendant's interpretation of the *Peters* case, that any mention of fresh complaint to a witness mandates calling that witness to testify, we consider his additional claims of inadmissible testimony. He contends that the victim should not have related the substance of her conversation with her friend, see note 4, *supra*; the guidance counsellor's actions in calling the Department of Social Services and her mother; the fact that she told her mother a "little bit" about the abuse and that she told the district attorney's office "roughly the same story" she had recited in court. The defendant argues further

_____

before the complainant's credibility is attacked. Apparently, only Massachusetts and Minnesota still adhere to this rule. See *State* v. *Blohm*, 281 N.W.2d 651, 652 (Minn. 1979). See also *State* v. *Kendricks*, 891 S.W.2d 597, 602-603 (Tenn. 1994). Within the past ten years, in fact, at least two States, Connecticut and Tennessee, have overturned precedent to conclude that detailed testimony of a fresh complaint witness is inadmissible as fresh complaint before the complainant's credibility has been attacked. See *State* v. *Troupe*, 237 Conn. 284, 303 (1996); *State* v. *Kendricks*, *supra* at 602-603. The rule in most jurisdictions is that, if the complainant has not been impeached, and the complaint is not a spontaneous utterance, only the fact of the complaint is admissible in the prosecution's case-in-chief. But many other jurisdictions allow evidence of the details of the complaint in certain other circumstances. See *Commonwealth* v. *Peters*, 429 Mass. 22, 27 n.7 (1999); *Commonwealth* v. *Licata*, 412 Mass. 654, 659 n.8 (1992). We have not been requested in this case to revisit the entire doctrine and that issue has not been briefed.

that the victim's friend, the fresh complaint witness, should not have been permitted to repeat the victim's reasons for delaying her report of the abuse or her own advice to the victim (to notify the guidance counsellor). The defendant claims additional error from the victim's mother's testimony that she received "[a]bsolutely shocking" and "totally devastating" information in a conversation with the guidance counsellor; her ensuing conversation with her daughter was "devastating[]" and her daughter spoke to two police officers and was "[e]mbarrassed" to speak with the male police officer, but could provide "additional details" to a female officer; and, finally that she gave a statement to the police that was "basically . . . what [she] . . . told . . . in court . . . with a little more detail." The defendant alleges impropriety in the admission of the testimony of Detective McDowell of the Lowell police department, that the victim detailed to her the allegations against the defendant and that the detective took statements from numerous witnesses who never testified.[6] We consider each of these contentions in turn, recalling that no objection was lodged to any of the above testimony.

Although the victim should not have testified to the substance of her conversation with her friend under the rubric of "fresh complaint," *Commonwealth* v. *Peters, supra* at 30 (complainant "may testify *only* to the fact that a fresh complaint was made and to whom it was made [and not] about the details of the complaint"), such testimony was admissible as evidence of the victim's state of mind. *Luz* v. *Stop & Shop, Inc. of Peabody,* 348 Mass. 198, 208 (1964).[7] "[S]tatements may be offered as evidence of state of mind without implicating the hearsay rule if the statements either do not contain assertions or are offered without regard to whether the assertions are true." P.J. Liacos, M.S. Brodin, & M. Avery, Massachusetts Evidence § 8.2.6 (7th

---

[6]McDowell testified only that she had taken statements from certain people. She did not testify as to the contents of any of those statements.

[7]The prosecutor did not articulate to the judge any basis for the admissibility of this testimony other than fresh complaint. However, "[i]f there is any basis for upholding the admissibility of the evidence, the reason on which the decision rests is immaterial and the lower court's ruling is sustained." *G.E.B* v. *S.R.W.,* 422 Mass. 158, 168 (1996).

ed. 1999). The prosecution's theory was that the victim's delay in informing anyone of the abuse was the result of the family's need for the defendant's financial support and the victim's reluctance to disrupt her family. According to the Commonwealth, the victim decided to reveal the abuse at the time she did because of the defendant's imminent return to her home (he had moved out earlier and the abuse had stopped) and her fear that the abuse would resume once he moved back. In such circumstances, it was within the judge's discretion to admit the testimony as evidence of the victim's state of mind on the subject of her delay in reporting the abuse. *Id.*[8]

We view it as improper, however, for the victim to indicate the action the guidance counsellor took after learning of the assaults. There was no evidence that this was other than hearsay and it only served as self-corroboration, indicating that the victim was sufficiently credible to cause someone in authority to take certain steps. It was also improper for the victim to state that she spoke to her mother a "little bit" about the situation. The victim may not characterize her fresh complaint, but may testify "only to the fact that [it] was made." *Commonwealth* v. *Peters, supra* at 30. Perhaps the most serious infraction was the victim's affirmative answer that she told "roughly the same story" during the videotaped interview prepared at the district attorney's office. This is simply another type of self-corroboration prohibited by *Commonwealth* v. *Peters, supra* at 28 ("We can find no decision, or other authority, which permits a complainant to engage in self-corroboration").

Moving on from the victim's own testimony to that of her mother, it is inadmissible hearsay for a witness other than the complainant (or a fresh complaint witness) to testify that complaint was made or how it was made, nor is it permissible for a witness to characterize the conversation in which she receives such information. "[T]he [mother's] emotional response or state of mind [that she was shocked by the] revela-

---

[8]Similarly, the testimony of the victim's friend recounting the victim's explanation for the delay in reporting while not admissible as fresh complaint, was admissible as evidence of the victim's state of mind.

tions lack relevance; they have no 'rational tendency to prove an issue in the case.' "[9] *Commonwealth* v. *Quincy Q.*, *supra* at 875, quoting *Commonwealth* v. *Fayerweather*, 406 Mass. 78, 83 (1989). Further, the mother should not have been asked whether what she had told the police was "basically . . . what [she] told . . . in court." *Commonwealth* v. *Peters*, *supra* at 28.

Detective McDowell was not called as a fresh complaint witness. She should not have been permitted to testify to the substance of her conversation with the victim. That was hearsay, with no applicable exception. Nor is the fact that she spoke to the various other persons during her investigation relevant.

As stated, no objections were lodged to the above inadmissible testimony. When the judge was considering motions in limine regarding the fresh complaint testimony prior to trial, he specifically stated that, because there would be no jury he would hear the evidence "based on the representations . . . made, and then rule on any objections . . . made either at the time of the testimony or at the completion of the testimony." There being no objections, particularly after such a statement, we cannot say that the judge erred in admitting the testimony. Nor can we conclude that the now-contested admission of the testimony created a substantial risk of a miscarriage of justice.

Because this was a jury-waived trial, we are not here concerned with the effect of this self-corroborating testimony on a jury. We assume that the judge is familiar with the law and did not permit himself to be influenced by such objectionable testimony. See *Commonwealth* v. *Ortiz*, 431 Mass. 134, 141 (2000). The remaining testimony that should not have been admitted was, for the most part, brief and fleeting. It was not sufficiently significant to have had a meaningful impact on the judge's decision. Cf. *Commonwealth* v. *Thompson*, 431 Mass.

[9]Defense counsel's failure to object to this particular testimony may have been a strategic measure to emphasize his point that it was unlikely that no one in the household had observed the abuse despite the fact that the assaults had occurred frequently for a period of years in the home with other family members present. During cross-examination of the mother, defense counsel himself elicited testimony of the mother's reaction to illustrate this precise point.

108, 119, cert. denied, 531 U.S. 864 (2000).[10,11] While the impact of this improper testimony on a jury might have been different, when a judge is the fact finder, we take into consideration the greater likelihood that he will not be influenced by extraneous factors.

The defendant did object to the friend's description of the victim's emotional state and to the testimony that the friend told her cousin what had happened and received unspecified advice from her. We therefore consider whether there was error in the admission of this testimony and, if so, whether this evidence was sufficiently prejudicial to have harmed the defendant. *Commonwealth* v. *Andrade*, 422 Mass. 236, 239 (1996). The statement regarding the victim's physical appearance at the time of the fresh complaint is not admissible as fresh complaint. *Commonwealth* v. *Quincy Q.*, *supra* at 874-875 (fresh complaint witness may testify to complainant's statements of facts of assault). It is admissible, however, as evidence of the victim's state of mind. *Luz* v. *Stop & Shop, Inc. of Peabody*, 348 Mass. 198, 208 (1964). The testimony regarding the friend's advice to the victim (to notify the guidance counsellor) and her request for advice from her cousin is inadmissible hearsay. It has no relation to fresh complaint and is unnecessary to give meaning to the victim's complaint. Given the lack of significance of this evidence, however, we can say with fair assurance that in this jury-waived trial, the verdicts were not substantially swayed by this error. Cf. *Commonwealth* v. *Thompson*, *supra* at 119.

2. *Prosecutor's closing.* The defendant claims that two segments of the prosecutor's closing were improper. As the defendant did not object to the contested remarks, our review is limited to determining whether there was error, and, if so,

---

[10]The defendant also contends that the mother's testimony that the defendant drooled when he kissed her was not proper. The victim had testified similarly. The mother's testimony corroborated the victim's testimony and was relevant. See *Commonwealth* v. *Good*, 409 Mass. 612, 621 (1991).

[11]The defendant further objects to references by various witnesses to tissue paper found in the basement of the home as "prejudicial suggestion and innuendo." However, this evidence was relevant to the victim's statement that she used tissue paper to clean herself and to her description of the final incident of rape. The evidence seems to have been of little or no evidentiary value as no sperm were detected on the tissue.

whether there was a substantial risk of a miscarriage of justice. *Commonwealth* v. *Grandison*, 433 Mass. 135, 141-142 (2001).

The first portion of the closing to which the defendant objects is as follows:

> "And although [the defendant] was cooperative when he first spoke with Detective McDowell on March 31st of 1998, and said 'I'll be around, I'm not going anywhere'; Detective McDowell was never able to find him again. And she testified that she looked for a number of months to speak with him again before he was indicted, and that it wasn't until a number of months later that he was finally arrested . . . . I would suggest, Your Honor, that that shows consciousness of guilt."

"In closing argument, counsel may argue the evidence and the fair inferences from the evidence." *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 416 (1978). The argument was a fair statement based on the evidence. Detective McDowell had testified without objection that, after she interviewed the defendant at the police station, she told him that she would probably want to speak to him again and that he said "okay" and "gave [her] every reason to believe he would" remain in the area. When she went to look for him, however, he was no longer living in his prior residence. She looked for him "for some time," and spoke with people in the community she thought would know of his whereabouts, but was not able to locate him. Ultimately, after the indictments were returned, a capias was issued for his arrest. The defendant's disappearance from his usual haunts may support a consciousness of guilt argument. See *Commonwealth* v. *Andrews*, 427 Mass. 434, 443-444 (1998). On this record, we cannot say that there was not a proper basis for the prosecutor to "suggest" consciousness of guilt as part of his argument.

The defendant further claims that the prosecutor misstated the evidence in closing argument when he said that the defendant first learned of the allegations against him during his interview with Detective McDowell: "When he first met with Detective McDowell was the first time he really knew what the allegations were." The defendant contends correctly that the evidence was that the first information about the allegations came from the victim's mother six days before the police interview, and

that the difference in the date of the defendant's knowledge indicates that the defendant did not disappear for approximately one week after learning of the charges. The prosecutor did misstate the evidence. However, the law is that the fact finder is to rely on his memory of the evidence, not that of counsel. See, e.g., *Commonwealth* v. *Dixon*, 425 Mass. 223, 235 (1997); *Commonwealth* v. *Howell*, 394 Mass. 654, 662 (1985). See *Commonwealth* v. *Ortiz*, *supra* at 141. There was no substantial likelihood of a miscarriage of justice.

3. *Ineffective assistance of counsel.* The defendant contends that trial counsel was ineffective for failing to object to the multiple examples of inadmissible hearsay or moving to strike the improper testimony and for not objecting to "material misstatements" of the evidence and improper closing argument. To show ineffective assistance, the defendant must show both that (1) "there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer" and (2) defense counsel's performance "deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

Although objections on the basis of *Commonwealth* v. *Peters*, 429 Mass. 22 (1999), did not lie, as discussed, there were other valid grounds for objecting to parts of the testimony. The judge's ruling at the outset of trial should have alerted trial counsel to object when fresh complaint testimony exceeded the permissible scope, yet he barely ever did so. We can discern no tactical reason for this failure. However, counsel's lapses did not deprive the defendant of an otherwise available, substantial ground of defense. Once more, as this was a jury-waived trial, exclusion of the testimony likely would have had no significant effect on the judge. We emphasize again that our conclusion might be different had there been a jury.

In regard to the contention that there was ineffective assistance of counsel for failure to object to the closing argument, because we have concluded that the consciousness of guilt argument was supported by the record, the failure of trial counsel to object cannot amount to ineffective assistance of counsel. *Commonwealth* v. *Oliveira*, 431 Mass. 609, 613-614 n.6 (2000).

Because the statement concerning the timing of the defendant's knowledge of the allegations did not create a substantial risk of a miscarriage of justice, the failure of an objection to said statement did not deprive the defendant of the effective assistance of counsel. *Id.*

*Judgments affirmed.*

SOSMAN, J. (concurring, with whom Cordy, J., joins). Eleven years ago, when confronted with a request to reconsider the fresh complaint doctrine, this court decided, with apparent reluctance, to retain "a doctrine which has its origins in outmoded, and invalid, sexual myths." *Commonwealth* v. *Licata*, 412 Mass. 654, 658 (1992). Perhaps as a result of the court's discomfiture with the fresh complaint exception to the hearsay rule, the jurisprudence surrounding fresh complaint now carries an assortment of technical restrictions and requirements that are not imposed on other hearsay exceptions.[1] As today's decision recognizes, *ante* at 445 n.5, almost all other States have now either abandoned or substantially modified the doctrine of fresh complaint. In my view, it is time for this court to revisit this antiquated doctrine and modernize our approach to the introduction of such testimony.

The theory underlying the fresh complaint doctrine was that persons who were sexually assaulted would complain of the assault immediately, that jurors would therefore be skeptical of any complaining witness who did not make such a prompt complaint, and that, in order to eliminate that skepticism, the prosecutor should be allowed to present evidence of the complaining witness's prompt complaint. See *Commonwealth* v. *Licata, supra* at 658. However, with regard to child victims, our fresh complaint jurisprudence has adopted the exact opposite of

[1]For example, a limiting instruction must be given both at the time the fresh complaint testimony is introduced and again during the final instructions to the jury, see *Commonwealth* v. *Licata*, 412 Mass. 654, 660 (1992); the complaining witness may not testify as to the contents of the fresh complaint, see *Commonwealth* v. *Peters*, 429 Mass. 22, 27-30 (1999); and the fresh complaint testimony may not include any description of the complainant's demeanor, see *Commonwealth* v. *Quincy Q.*, 434 Mass. 859, 869-875 & n.20 (2001).

the premise on which the doctrine rests: a child's circumstances commonly make it difficult, if not impossible, for the child to make a prompt complaint of sexual assault and, contrary to the theoretical justification for the doctrine, a child's much later report of sexual assault is admitted as "fresh complaint" whenever there is a reasonable explanation for the child's failure to make a prompt complaint. See *Commonwealth* v. *Fleury*, 417 Mass. 810, 813-815 (1994), and cases cited; *Commonwealth* v. *Lavoie*, 47 Mass. App. Ct. 1, 7-8 (1999); *Commonwealth* v. *Costello*, 36 Mass. App. Ct. 689, 692-694 (1994); *Commonwealth* v. *Hyatt*, 31 Mass. App. Ct. 488, 490-492 (1991); *Commonwealth* v. *Souther*, 31 Mass. App. Ct. 219, 221-222 (1991); *Commonwealth* v. *Lagacy*, 23 Mass. App. Ct. 622, 626 n.6 (1987). And, as to adult victims, we have long recognized that there is an understandable "reluctance to discuss with others, particularly strangers, the uncomfortably specific details of a sexual attack." *Commonwealth* v. *Licata, supra* at 657. See *Commonwealth* v. *Lavalley*, 410 Mass. 641, 646-647 n.7 (1991) ("social stigma and skepticism which victims of rape often confront" make prompt disclosure unlikely). See also *Commonwealth* v. *Kruah*, 47 Mass. App. Ct. 341, 346-347 (1999) (threats, fear of being disbelieved, and "community mores" made it difficult for adult victim to complain of sexual assault perpetrated by respected member of victim's immigrant community group).

In short, the doctrine of fresh complaint rests on a demonstrably false premise, and we retained the doctrine only so that prosecutors would have some means of addressing the regrettable fact that some jurors might still subscribe to that false premise. *Commonwealth* v. *Licata, supra* at 658. While other myths pertaining to sexual assault still abound, the phenomenon of long-delayed disclosure of sexual abuse is now familiar and highly publicized. See *Ross* v. *Garabedian*, 433 Mass. 360, 368-370 (2001) (Sosman, J., dissenting) (chronicling widespread publicity pertaining to child sexual abuse). As such, the fresh complaint doctrine as we know it is designed to address a problem that either no longer exists or that is rapidly shrinking to insignificance.

This is not to say that the kind of evidence that is presently admissible under the doctrine of fresh complaint should be made inadmissible. To the contrary, one of the problems with the fresh complaint doctrine and its somewhat artificial strictures (see note 1, *supra*) is that it operates to obscure the relevance and admissibility of evidence concerning the timing, circumstances, and manner of a complaining witness's initial disclosure of sexual assault. In many cases of alleged sexual assault on a minor, the defense position is that no sexual activity took place at all and that the complaining witness's testimony is a complete fabrication. Oftentimes, the defense proffers a specific theory as to why the child would be telling such an outright lie, e.g., mental illness has rendered the child delusional, the child has been subjected to suggestive interviewing techniques, the child has been manipulated by some other adult with a motive to harm the defendant, or the child has invented the tale to retaliate against or escape parental control and discipline. Trials of such cases revolve around what caused the child to come forward with an allegation of sexual assault, and the jury's analysis of any such cause necessarily hinges on the details of how, when, and to whom the child made the disclosure of sexual abuse. The prosecutor aims to demonstrate that the circumstances of the child's disclosure are understandable, reasonable, and devoid of any suspicious trappings, and, in particular, that they are inconsistent with the defense theory as to the motivating influences affecting the child's accusations. The defense aims to demonstrate the exact opposite, that the details and circumstances of the disclosure bear the telltale signs of suggestive questioning, manipulation, delusion, or vengeful rebellion. For both sides, the precise context of the child's disclosure and the detail surrounding that disclosure are commonly the linchpin of the case.

Confining the evidence to the strict and somewhat arbitrary contours of the fresh complaint doctrine overlooks the fact that, in most cases, such evidence has taken on its own substantive relevance. Much of this evidence is not even hearsay — it is not offered for its truth, but merely to show that particular

words were said.[2] Obsession with the strictures imposed on fresh complaint testimony should not blind us to the fact that fresh complaint is not the only basis for admitting such evidence. For example, the rule of fresh complaint precludes testimony about the complaining witness's demeanor during the disclosure, precludes evidence of the reaction of the persons to whom the disclosure is made, and precludes the complaining witness from testifying about the fresh complaint at all. See *Commonwealth* v. *Quincy Q.*, 434 Mass. 859, 869-875 & n.20 (2001); *Commonwealth* v. *Peters*, 429 Mass. 22, 27-30 (1999). Yet, if the defense theory is that the child's accusations are the product of hallucination, is not the child's alert, focused demeanor while making the disclosures potentially relevant to refute that theory? Or, if the theory is that the child's mother planted the accusation in the child's mind during a bitter divorce, is it not relevant that the child was hesitant to tell the mother about the father's abuse, or that the mother reacted with disbelief and threatened to punish the child for telling such an abominable lie? And why should the child complaining witness be precluded from testifying as to his or her own recollections of an allegedly suggestive interview? Then, to cap it off, the mandatory limiting instruction pertaining to fresh complaint is inapplicable (and confusing) when the evidence is directly relevant to a defense theory as to why the child has invented the accusation of sexual assault. Whether the evidence refutes or supports that theory, an instruction telling the jury that they may only consider it for purposes of "corroboration" seriously mischaracterizes the relevant scope of such evidence.

In the present case, the prosecutor invoked only the doctrine of fresh complaint as the basis for introducing the complaining witness's conversation with her school teammate (which was her first disclosure of any sexual abuse). Much of the evidence introduced concerning that conversation went beyond the strict boundaries of the fresh complaint doctrine, yet was highly probative of various contested issues in the case. The defendant's

---

[2]For example, a prosecutor addressing a defense theory that the child was subjected to suggestive interviewing techniques will want to introduce evidence of the precise sequence and wording of questions and answers during that interview, not to demonstrate their "truth," but to demonstrate that the words and sequence were not suggestive.

theory (as articulated in his statement to the police) was that the child was retaliating for recent limitations on her social life. At trial, defense counsel argued that the delay in disclosure made no sense, contending that the mother had had forthright conversations with the child on the subject of sexual activity and that the child would have readily confided in the mother if there had been any abuse. The prosecutor's theory was that the defendant, who had moved out of the house and stopped abusing the child some months earlier, was about to reconcile with the child's mother and move back into the house, and that the child made her disclosures out of fear that the abuse was about to resume. The prosecutor contended that the long delay in complaining about the prior abuse was due to the family's financial dependence on the defendant and the child's reluctance to disrupt a family that had already suffered significant tragedy.[3] Against that backdrop, the manner in which the child tentatively approached her school teammate, pretended to seek advice for a "friend" who was having a "problem" with her stepfather, and, under that guise, outlined for the teammate her "friend's" specific concerns about family disruption and loss of badly needed financial support, were all probative of the child's true motivation. Similarly relevant was that, even after confiding that she was speaking about herself and not a "friend," the child swore her teammate to secrecy, and told a school guidance counsellor about the abuse only after further encouragement from her teammate. In short, the manner, means, and timing of her disclosure were more consistent with that of a fearful youngster, hesitant to make accusations that she knew would be destructive of her family's interests, than they were with that of an angry teenager miffed at being told that she could not go out on a date. A rule that would limit the testimony concerning that conversation to the witness's recitation of the specific details of the sexual acts alleged (which the child did not actually reveal during that initial disclosure) does not make sense. Rather, the child's reticence about disclosing embarrassing details even to

---

[3] The victim's sister had died, and her mother was seriously disabled. The victim had not had the benefit of a relationship with her own father, and she was worried that voicing her accusations would deprive her half-brother of his father.

her most trusted friend (a reticence that persisted when the child first spoke to a male police officer and to her mother) illustrates one of the difficult barriers a victim must overcome in making a complaint of sexual abuse and makes the delayed disclosure understandable.

By the same token, we should recognize that there are cases where fresh complaint testimony, even kept within its traditional limits, offers nothing of probative value. For example, if the sexual assault has been perpetrated by a stranger and the defense rests entirely on identification, with no suggestion that the complaining witness's claim of sexual. assault has been fabricated, how does fresh complaint testimony assist the jury's assessment? It does not. Its sole purpose in such a case is to repeat the terrifying and profoundly disturbing details of the assault, appealing to the jurors' emotions on an issue that is not contested as a means of generating sympathetic momentum with which to overcome possible weaknesses in the identification evidence. Enamored of this technique, prosecutors appear content to live with the increasing strictures imposed on fresh complaint in order to reap its benefits in cases where such testimony should logically be excluded.

A reevaluation of our adherence to the doctrine of fresh complaint is, in my opinion, long overdue. Whatever remains of the doctrine ought to be tailored to a contemporary, not an archaic, understanding of the complex process by which victims overcome the many impediments to disclosing sexual assault. And, once modernized, our approach to fresh complaint testimony must recognize the close relationship between the timing, manner, circumstances, and details of the complaining witness's initial disclosure and the theories advanced by the defense, which frequently make such testimony directly relevant to substantive issues in the case, and not merely "corroboration."[4] This court should welcome the opportunity to reconsider

---

[4]Even if a specific theory has not yet been expressly articulated by the defense, it may be appropriate to allow the prosecutor to introduce evidence of the timing, manner, circumstances, and details of the disclosure in order to dispel likely juror concerns or likely avenues of attack by the defense. For example, if the allegation of sexual assault arose during therapy, the prosecutor may have a legitimate need to demonstrate that the therapeutic sessions

its continued adherence to an antiquated version of the fresh complaint doctrine.

had been conducted in a nonsuggestive manner and that the complaining witness initiated the disclosure in a manner that was not influenced by the therapist. While the traditional fresh complaint doctrine was designed to address juror skepticism about delay in reporting, a modern fresh complaint doctrine should be designed to address other forms of popular skepticism concerning the reporting of sexual assaults.